[No. 19376. Department One. December 1, 1925.]

Edgar S. Hadley *et al.*, *Respondents*, v. Arms & Scott, *Appellant.*[1]

Municipal Corporations (380, 383, 390-392)—Streets—Use as Highway—Violation of Ordinances. In an action for injuries sustained when a city fire truck was necessarily swerved into plaintiff's car, obeying traffic ordinances, through the negligence of the driver of defendants' truck in blocking the street in violation of the ordinances, the matters of negligence and contributory negligence are mixed questions of law and fact, authorizing instructions as to the violation of ordinances giving city fire apparatus the right of way, on the theory that the ordinances were enacted for the protection of every person in the street; so that it would be error to take the case from the consideration of the jury, there being conflicting facts in the evidence upon all points tending to show negligence constituting the proximate cause of the accident.

Appeal from a judgment of the superior court for King county, Hall, J., entered March 7, 1925, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained in an automobile collision. Affirmed.

*Roberts & Skeel,* for appellant.

*J. W. Robinson, John F. Murphy,* and *Edgar S. Hadley,* for respondents.

Holcomb, J.—The evidence, to sustain respondents' case, brought for damages to respondent wife and the automobile of respondents, was challenged, both at the end of respondents' case and at the conclusion of all the evidence, on the ground that no actionable negligence was shown as against appellant. Respondents allege, and introduced evidence to sustain, substantially the following cause of action:

On February 9, 1924, Mrs. Hadley, with three friends in her automobile, was driving in the car of respond-

[1]Reported in 241 Pac. 26.

ents north on Sixth avenue, in Seattle, until she reached Stewart street. It was about 2 o'clock p. m., and the day was clear. As she entered the intersection on Stewart street, she heard a fire alarm, and saw an oncoming fire apparatus at a distance, as she thought at the time, of about one block to her right, approaching Sixth avenue on Stewart street from the east. She noticed a vacant space where she could clear the street for the fire apparatus at a point at the northwest corner of Stewart street and Sixth avenue, where there is a comfort station. Sixth avenue, north of Stewart street, was blocked with traffic, and to the south of the intersection, cars were thickly parked along the right hand side of the street; cars were also parked on the south side of Stewart street to her right as she entered the intersection, so that there was apparently no place left where she could obey the ordinance of Seattle and go to the right hand curb and park her car until the fire apparatus had passed.

She gave a left turn signal, passed around the center of the intersection, and stopped as stated. The evidence is contradictory, of course, but there is evidence on behalf of respondents that she parked her car so that it was substantially parallel with the curb at the northwest corner of Sixth and Stewart, the left rear wheel (which was the rear wheel of the car nearest the curb) being about one and one-half feet from the curb, and the front wheel being up against the curb stone. Another car had parked just in front of her at this intersection, the place where the comfort station was situated being a small triangular space.

Very soon after she had so parked the car, it was struck a glancing blow in the rear by the fire truck, causing injury to herself and damage to the car. The car was thrown up across the curb stone, onto the paving and against the comfort station, and almost demol-

ished.  The place where she parked the car was out of
the path of the approaching fire truck, and the only
available parking place she could see.  She knew it was
her duty under the ordinance of Seattle to get out of
the way of the fire apparatus, and go to the nearest
right hand curb and park.  She was followed at some
distance, unknown to her, by a heavy coal truck weigh-
ing about four tons, and loaded with four tons of coal,
belonging to appellant and being then operated in its
business.  There is, also, evidence on behalf of respond-
ents that, after Mrs. Hadley had entered the intersec-
tion, gotten clear of the path of the fire truck, and
parked her car at the curb near the comfort station,
the coal truck appeared, traveling in the same direction
she had come, entered the intersection of Sixth avenue
and Stewart street, and proceeded to the center of the
intersection where it stopped when the fire truck, travel-
ing at a rate of from fifteen to twenty miles an hour,
was at a distance of twelve to fifteen feet east of the
intersection of Stewart street and Sixth avenue.

The fire truck consisted of a combination hose and
pumper truck, and had the driver, the captain, and
three firemen on it, the driver riding on the right side
of the truck, a fireman riding on the left a little in front
of the seat of the driver, and who was sounding a siren,
and the captain on the seat to the left of the driver.
The siren or bell was being sounded continuously.  The
combination fire truck weighed nearly eight tons with
the men that were on it.

The fire truck was being driven down the middle of
Stewart street to the west, it being customary for fire
trucks to be driven in the middle of the street on ac-
count of the cars standing near the curb, and gener-
ally for the safety of people on the street and on the
fire apparatus.  There is an ordinance of Seattle that
gives fire apparatus, when responding to emer-

gency fire calls, the right of way over all streets. There is, also, an ordinance requiring all vehicles, upon the approach of fire apparatus to go to the nearest right hand curb and stop parallel with the curb.

After Mrs. Hadley had cleared the route of the fire truck and when the truck was a distance from Sixth avenue of about thirty-five feet, the driver of the fire truck for the first time noticed the coal truck of appellant entering Stewart street from the south on Sixth avenue. On account of cars lined up along the curb to the right of Sixth avenue, the coal truck was being driven about six or seven feet from the curb line. The driver of the fire truck saw that the coal truck was still moving slowly, but as it was moving slowly he thought it would stop before reaching the center of the intersection. It did not stop, however, until it entered the intersection, about twenty-five feet. The intersection was forty-eight feet across in each direction, the middle of it, therefore, would be twenty-four feet from the curb line. When at a distance of twelve to fifteen feet from the intersection, the driver of the fire truck, seeing that a collision with the coal truck was imminent, as it had reached the center of the street, and was directly in the path of the approaching fire truck, attempted to pass to the right and in front of the coal truck by swerving to the right. At this time the coal truck stopped in the center of Stewart street, and probably stopped, as was claimed by appellant, in about four feet; but, if the evidence and inferences from evidence on the part of respondent are correct, it never attempted to stop until it had gotten too far into the intersection of Stewart street, and was in the path of the oncoming fire truck.

When the driver of the fire truck swerved to the right, he missed the coal truck, but was unable to swing back to the left in time to avoid the car parked by Mrs. Hadley. The fire truck struck the Hadley car a glancing

blow as he swerved to the left after passing the coal truck, striking the automobile about the center of its rear. The driver of the fire truck said he cleared the front of the coal truck by two feet. The place where Mrs. Hadley parked her car was, therefore, a safe place, if the coal truck had not continued, after entering the intersection, to the place where it stopped and the fire apparatus had been permitted to continue on the line it was traveling. In that case, it would have missed the car of respondents a distance of from seven to eight feet. If it had continued in its course down the middle of the street, it would have struck the coal truck about in line with the driver's seat, and would probably not only have injured or killed the driver of the coal truck and his assistant, but also the driver and firemen riding on the fire truck. The driver of the fire truck, seeing the position of the coal truck, had only about one second in which to act. The coal truck, according to the testimony of its driver, was approaching Stewart street at six or seven miles an hour, and could have been stopped almost instantly.

Under these conditions, it is the theory of respondents that the driver of the coal truck did, or should, if attending to his duty properly and using ordinary care, have heard the alarm of fire and stopped at the south line of the intersection of Sixth avenue and Stewart street, or within a very few feet thereof, and that it was his negligence in not doing so but continuing on until it was in the path of the fire truck which was the proximate cause of the injury.

There is evidence that the fire truck was somewhat hard to steer, but the driver of it had driven it for some time and was familiar with its operation. Appellant contends that the fire captain grabbed the wheel and this interfered with the steering of the driver, but the driver testified that he did not know that the cap-

tain grabbed the wheel; so that, if such was the case,
it was insignificant, and did not in the least interfere
with the steering of the driver. There is, also, some
evidence brought out by appellant that that particular
kind of steering gear was abandoned and not in use any
longer; but the driver testified that the same fire truck
was still in use with the same steering gear, but that
there was a later apparatus of that kind which had im-
proved the steering gear and was not so hard to steer.

The thirty-one specific assignments of error of ap-
pellant are argued generally in three groups, as is
permitted by our rule, and we shall discuss them in
the same order as they are presented and discussed
by appellant. Some of the specific assignments are not
pressed by appellant in the briefs.

The first group of questions argued consist princi-
pally of the claim that appellant was entitled to a judg-
ment at the close of respondents' evidence, or, at all
events, at the close of all the evidence, and the case
dismissed. It is contended that the violation of §§ 77
and 78 of ordinance 41695, of Seattle, was not con-
nected nor related in any way with the collision be-
tween the fire truck and respondents' car. It is urged
that the ordinance was not adopted for the protection
of respondents and they did not come within the pro-
visions; citing *Rampon v. Washington Water Power
Co.*, 94 Wash. 438, 162 Pac. 514, L. R. A. 1917C 998; *Bog-
dan v. Pappas*, 95 Wash. 579, 164 Pac. 208; *Stoddard v.
Smathers*, 120 Wash. 53, 206 Pac. 933, and *Winsor v.
Fonda*, 126 Wash. 402, 218 Pac. 219.

The facts and circumstances in the foregoing cases in
no way parallel those in the case at bar. Section 77 of
Ordinance 41695 of Seattle, which was given to the
jury by the court as having a bearing upon the matter,
provides that vehicles shall have the right of way in
the order named in the use of all streets, namely: ap-

paratus of the fire department . . . when respond-
ing to emergency calls.

Section 78 of the same ordinance, given to the jury
by the court, was as follows:

"Every driver, on the approach of apparatus of the
fire department shall immediately proceed to the right
hand curb, and come to a full stop standing parallel
thereto. At points where fire alarm semaphores or
other street fire signals are located when the alarm
sounds and the semaphore drops, or other signal is
given, all drivers in sight or hearing thereof shall fol-
low the directions indicated above, and shall remain so
stopped until the alarm ceases ringing and such other
signals cease, and then proceed only in the event that
there is no fire apparatus approaching except under the
direction of traffic officer."

In connection with the foregoing ordinance require-
ments, the court also charged that it was the duty of
the driver in the operation of his coal truck to observe
these provisions of the ordinance; and if he failed to do
so, that of itself would be negligence, and if such neg-
ligence was the proximate cause of the injury and dam-
age to the plaintiffs, the defendant would be liable for
such injury and damage; that, on the other hand, it was
the duty of plaintiff wife also to observe these provi-
sions of the ordinance, and if she failed so to do, such
failure would be negligence, and if such negligence
either caused or directly contributed to the injury and
damage of plaintiffs, then the plaintiffs could not re-
cover.

The jury was also charged that, in regard to section
78 of the ordinance, if plaintiff wife violated the pro-
visions thereof, such violation was in itself negligence,
and if such negligence in any manner contributed to
the injury, they could not recover; but if, however, they
found from the evidence that plaintiff wife, in stopping
her auto where she did, and in the position it was at the

time of the collision did not comply with § 78 of the ordinance, still, if it had stopped in such a position that it would not have been struck by the fire truck but for the negligence of the driver of the coal truck in causing the fire truck to swerve to the right, then her manner of stopping and parking her car was not a proximate cause of the collision, and she would not be guilty of contributory negligence.

The court also charged respecting § 77 of the ordinance giving the right of way to fire apparatus that that right of way was to be exercised with due regard to the rights of others; that it was the duty of the driver of the coal truck so to operate the same as to accord this right of way to the fire truck; that, if the jury found from the evidence that the driver of the coal truck negligently placed the truck in such a position in the intersection that the driver of the fire truck reasonably believed that he would collide with it, and to avoid such expected collision swerved to the right, and in so doing used that degree of care that an ordinarily prudent operator of a fire truck would have used under like or similar circumstances, and in so swerving he collided with appellants' automobile, then under such circumstances the negligence of the driver of the coal truck was the proximate cause of the collision between the fire truck and the plaintiffs' automobile; that on the other hand, if they found that a reasonably prudent and careful driver of a fire truck would not have swerved to the right under like or similar circumstances, or in swerving to the right the driver of the fire truck did not use such reasonable care, and that such negligence on the part of the driver of the fire truck caused or materially contributed to the cause of the collision, plaintiffs could not recover.

The jury were also instructed that, in considering whether the driver of the coal truck or the driver of

the fire truck or the plaintiff wife in the operation of her automobile were negligent, they should take into consideration whether an emergency existed; and the test of the duty of the driver of an automobile or truck in an emergency is the same as in other circumstances, —that is, what would a reasonably careful and prudent operator of a truck or automobile have done in such an emergency, in considering which the jury must do so in the light of all the circumstances then existing.

The jury were also instructed that the driver of a truck or automobile, in the face of an impending peril that was not caused by his own negligence, is bound only to use his best judgment in avoiding such peril, and if he does so, and adopts a certain course to avoid such impending peril, and uses reasonable care in pursuing such course he is not guilty of negligence, even though the jury believe he should have adopted some other course. Other instructions were offered by appellant and these instructions were objected and excepted to, and it is argued that the court adopted an erroneous theory and submitted questions of law to the jury as questions of fact.

We cannot agree with this contention. These questions were probably mixed questions of law and fact, and it was the duty of the court, in instructing the jury, to instruct them as to what were the rights and duties of all the actors concerned in this accident. The ordinances in question were enacted for the benefit of every person using the streets; for the safety of the fire department, and to the end that it be not obstructed in the performance of its emergent duties. The ordinances were proper to be considered and the compliance or non-compliance therewith in fact, as matters of negligence, were properly submitted to the jury.

The provision of the ordinance to the effect that cars should not be parked where signs existed prohibiting

parking, requested by appellant to be given to the jury, and which was refused, was immaterial. The provisions of the ordinance requiring vehicles to get out of the way of fire apparatus and proceed to the right hand curb on the approach of fire apparatus would, of necessity in such cases, supplant the no-parking provision. Upon the approach of fire apparatus on an emergency call, no one could assume which of several streets near at hand the fire apparatus would take. There is no point in the contention that Mrs. Hadley herself violated the no-parking ordinance by parking at the curb next to the comfort station, which, in general, was no-parking space. It was her duty to get out of the way, and she went to the nearest safe place, as she thought, where she could find a place to park with her car substantially parallel to the curb, and out of the way of the oncoming fire truck. She commenced in plenty of time to get out of the way. According to the men on the fire truck, she was out of the way. Appellant's truck emerged in the path of the fire truck, and was then at least a proximate cause of the subsequent injury and damage. Whether the driver of the coal truck was the sole cause of the accident is immaterial. If both he and the driver of the fire truck were concurrent causes (although the city would probably not be liable), yet, either one of them whose negligence was a proximate cause of the damage, but for which it would not have occurred, may be held liable.

We have probably uniformly held, as in the *Rampon* case, *supra,* that it is not negligence *per se* for a person to drive at an unlawful rate of speed, or upon the wrong side of the street if the non-observance of the traffic ordinance *did not result in injury to the one for whose protection it was enacted.* A violation of the ordinance in question, if by the driver of appellant's coal truck,

and not by the driver of respondents' automobile, and
not by the driver of the fire truck, for all of whose bene-
fit the provisions of the ordinance were enacted, can-
not be said, as a matter of law, not to be negligence on
the part of appellant through its driver. Nor can we
say, as a matter of law, that there was contributory
negligence on the part of respondents through respond-
ent wife. Whether she parked her car properly, and
whether she could find any other place to park were
questions of fact. In fact if, as the jury found by its
verdict, the driver of respondents' car was not negli-
gent, and the driver of appellant was negligent in get-
ting in the way of the fire truck, his act was the effi-
cient cause but for which the accident would not have
happened.

A very similar case is that of *Hellan v. Supply Laun-
dry Co.,* 94 Wash. 683, 163 Pac. 9, where we held that,
as there may be more than one proximate cause for an
accident, and where the independent negligence of dif-
ferent persons concurs, all may be liable; and as proxi-
mate cause is a mixed question of law and fact, and is
for the jury unless the facts are undisputed and the
inferences plain, it is error to decide, as a matter of
law, that one negligent actor in the affair was the proxi-
mate cause of the accident, and not another which would
render that other not liable. And what would a rea-
sonably prudent person do in a sudden emergency is
always a question for the jury unless reasonable minds
cannot differ therein. See, also, *Maskell v. Alexander,*
91 Wash. 363, 157 Pac. 872, L. R. A. 1918C 929; *Gray v.
Washington Water Power Co.,* 27 Wash. 713, 68 Pac.
360; *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac.
582.

We are therefore positive that the trial court would
have erred had it granted appellant's motion for judg-
ment at the close of respondents' case, and at the close

of all the evidence, and did not err in denying the motions.

The argument under the second group of errors by appellant covers much of the ground that was covered in the foregoing discussion, and also intermingles a great deal of the evidence that was introduced by appellant, while we are bound to consider that the evidence introduced by respondent, after the jury had passed upon the same and resolved all conflicts in favor of respondents, is conclusive on us.

Appellant contends, however, that there was no conflict upon a certain issue of fact as to the driver of the coal truck of appellant not hearing the fire alarm, nor seeing the fire apparatus, nor being required to stop any sooner than he did, under the evidence. Appellant asserts that there is no conflict in the evidence that the driver of appellant's truck, and the driver of respondents' car, reached the intersection almost at the same time; that the driver of respondents' car did not hear any siren or other fire alarm until she reached the intersection, and did not see the approaching fire truck until she reached the intersection, and therefore the driver of appellant's truck should not be held to any greater degree of care than the driver of respondents' car.

But the facts which we summarized and alluded to, in discussing the other grouped errors of appellant, touches this question also. It is true that the driver of appellant's truck said that respondents' car passed him just before he reached the intersection; but he also said that he was stopped by the congestion of traffic at the intersection of Olive street and Sixth avenue, one block away from Stewart, on account of an incoming interurban train, and that he was compelled to wait until the interurban car stopped, when he went ahead. He is contradicted by the evidence of respondent wife, to

the effect that she never at any time saw the coal truck either before she reached the intersection of Sixth avenue and Stewart street or after she had stopped and parked her car. He is contradicted also by the firemen, who said that the car of respondents had crossed Stewart street and made its turn across Sixth avenue to the northwest corner of the intersection, and come to rest at the parking place she found before appellant's truck emerged into view in the intersection of Sixth and Stewart. So, upon that phase, there were conflicting facts in the evidence which it was the jury's business to pass upon, and not ours nor the trial court's.

In this connection, appellant argues that, while the fire truck has the right of way over other vehicles, that did not authorize the driver to take chances or violate the laws of the road. That is true, and the court, in effect, so instructed the jury. It is also urged, as a matter of law, that the driver of the fire truck had sufficient time to slow his speed after he discovered the coal truck's position. Unfortunately for this contention, the driver of the fire truck said he could not apply his brakes or he would have run into the coal truck and probably killed the driver thereof and his assistant; that he had to swerve.

It is also insisted that the fire truck had a space of more than twenty-five feet in which to pass between the coal truck and the rear end of respondents' automobile unless the rear end of respondents' automobile was sticking out at an angle into the street so that the left rear wheel was about twelve or fourteen feet from the curb. That, also, is in conflict with certain evidence introduced by respondents. Neither this court nor the trial court is authorized to so decide.

The third contention is that the trial court erred in refusing to strike from the pleadings the allegations relating to the traffic ordinances, and in overruling appel-

lant's objection to submitting them to the jury. What we have said concerning these provisions of the ordinances in discussing the other errors claimed, we think sufficiently answers this argument.

We can find no sufficient reason for reversing the judgment.

Affirmed.

TOLMAN, C. J., ASKREN, FULLERTON, and MITCHELL, JJ., concur.