MEESE et al. v. NORTHERN PAC. RY. CO.

(District Court, W. D. Washington, N. D.   July 10, 1913.)

No. 2,489.

1. CONSTITUTIONAL LAW (§ 46*)—DETERMINATION OF CONSTITUTIONAL QUESTIONS.

The question of the constitutionality of the Workmen's Compensation Law (Laws Wash. 1911, c. 74), in compelling contribution from an employer for death of a workman through the negligence of a third person not in the same employ, is not before the court where, the third person being sued, the complaint is demurred to on the ground of the statute abolishing right of action against him.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 46.*]

2. DEATH (§ 11*)—RIGHT OF ACTION—ABOLISHMENT.

Right of action for death by wrongful act does not exist at common law, but solely by statute, and so by statute may be taken away.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 10, 15; Dec. Dig. § 11.*]

3. MASTER AND SERVANT (§ 87½, New, vol. 16 Key-No. Series)—WORKMEN'S COMPENSATION LAW—ABOLISHMENT OF RIGHT OF ACTION.

Right of civil action for death of a workman, not merely against the employer, but against a third person, where the accident occurs "at the plant" of the employer, is abolished by the Workmen's Compensation Law (Laws Wash. 1911, c. 74); section 3 providing that all civil causes of action for injury to or death of workmen are abolished, "except as in this act provided," the only relevant exception being the proviso that if the injury to a workman occurs "away from" the plant of the employer, through negligence of a third person not in the same employ, he, or in case of his death his family, may elect to take under the act, or to sue such third person; and section 5 providing for payment to a workman injured, or in case of his death to his family, of industrial insurance

from the fund created by the act, which, "except as in this act otherwise provided, * * * shall be in lieu of any and all right of action whatsoever against any person whomsoever."

At Law. Action by Mary A. Meese and others against the Northern Pacific Railway Company. Demurrer to complaint sustained.

Teats, Teats & Teats, of Tacoma, Wash., for plaintiffs.
C. H. Winders, of Seattle, Wash., for defendant.

CUSHMAN, District Judge. This suit was brought to recover for the death of the husband and father of the plaintiffs, alleged to have been caused by the wrongful act of the defendant. Defendant demurs to the complaint upon several grounds, the only one argued being:

"That there is no authority in law under which the plaintiffs' action can be maintained as against this answering defendant, it appearing from the complaint that Benjamin Meese, on account of whose wrongful death this action was brought, sustained the injuries of which complaint is made at the place of work and plant of his employer, and that plaintiffs' claim comes within the terms of chapter 74 of the Session Laws of the State of Washington for 1911, being an act relating to compensation of injured workmen."

The complaint alleges:

"On the 12th day of April, 1913, and for a long time prior thereto, Benjamin Meese, deceased, was in the employ of the Seattle Brewing & Malting Company, in its plant located at Georgetown, in the city limits of the city of Seattle, King county, Washington, and as part of his duty under his employment with the said brewing company was to assist in loading beer upon the cars and also to place government stamps upon the barrels, half barrels, and quarter barrels, when filled with beer and before the same were loaded into the railroad cars spotted at the proper place at said brewing plant for said loading. That at the plant the said defendant had a railroad track running alongside of the warehouse and buildings containing the finished products to be shipped by said brewing company, which said siding was connected with defendant company's switches, siding, and main tracks; and the said defendant company furnished the said brewing company with cars on said track to be loaded with products of said plant to be carried by said defendant company to their different points of destination. That after the said cars are placed upon said siding of said defendant company, the cars were spotted and moved by the brewing company to different places necessary for the loading on said siding, with appliances furnished and operated by the said brewing company; and when the said cars were so placed upon the said siding and spotted at the proper places for loading the cars, said brewing company used skids and other appliances extending from the car into the warehouse of the brewing company, for the purpose of rolling the kegs, barrels, quarter barrels, or half barrels of the finished product of the brewing company from the plant into the car; and the said brewing company employed a crew of men called 'loaders' for the purpose of loading said car with their said finished product, and also with ice sometimes necessary in the shipment of the said finished product, and at the same time of loading the said car the said brewing company employed workmen to place the necessary government stamps upon each of the receptacles of the said finished product, which was usually done while said receptacles were moving along the said skids; and the workmen who performed said work usually stood upon the floor or platform beneath the skids, and which platform ran alongside of the building and plant of the brewing company and into the opening in the building or plant where the finished product was taken from the storehouse or plant. That while loading and filling the said car, the movement of the said car, especially without notice to the loading crew and the employé who placed the government stamps upon the receptacles, was dangerous to the workmen of the brewing company, as the movement of the said

car would cause the skids and receptacles of the finished product to fall upon the employés of the brewing plant and injure them. That at the time of the accident herein complained of the deceased husband and father was placing government stamps upon the receptacles, half barrels, of the finished products of the brewing company, in his regular course of employment with the brewing company, and located to the south of the skids and half barrels as they moved from the plant of the brewing company into the car. That while the said deceased, Benjamin Meese, was so employed, placing the government stamps upon the half barrels and filling and loading a car upon said siding, on the 12th day of April, 1913, at about the hour of 6:10 o'clock of the evening of said day, the said defendant company, by and through its switchman, locomotive engineer, and employés, carelessly and negligently, without warning to the deceased, Benjamin Meese, and without warning to any of the loading crew, then in the employ of the said brewing company, loading the car upon the said siding, knowing that said men were at that time loading the car, caused a number of cars to come down the said siding alongside of the plant of the said brewing company with tremendous force and momentum, striking the car then being loaded with tremendous force and momentum, knocking the car along the track, causing the skid then being used by loading crew to load the said car to fly backwards and against the deceased, causing a large number of half barrels loaded with the finished product of the brewing company upon the said skids to fall upon the deceased, maiming and injuring him so that, from said injuries so received through the carelessness and negligence of the defendant company, the said Benjamin Meese, deceased, died on the morning of the 17th day of April, 1913, leaving his widow and children, parties plaintiff herein."

The Workmen's Compensation Law (Session Laws Wash. 1911, p. 345) provides:

" * . * * The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents, is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided. * * * " Section 1, pp. 345, 346.

"Workman means every person in this state, who, after September 30, 1911, is engaged in the employment of an employer carrying on or conducting any of the industries scheduled or classified in section 4, whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer: Provided, however, that if the injury to a workman occurring away from the plant of his employer is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case. Any such cause of action assigned to the state may be prosecuted, or compromised by the department, in its discretion. Any compromise by the workman of any such suit, which would leave a deficiency to be made good out of the accident fund, may be made only with the written approval of the department." * * * Section 3, pp. 347, 348.

"Each workman who shall be injured whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of

his employer, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation in accordance with the following schedule, and, except as in this act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever." Section 5, p. 356.

No question is made but that the employment of the deceased was of an extrahazardous character and within those employments provided for in the act. The question presented is purely one of statutory construction.

[1] Upon the argument much was said concerning the constitutionality of a legislative act compelling contribution from one person, or employer, to be used in paying for the negligence of another. This phase of the act is not now before the court. That is a defense only to be made by those obliged to contribute to, or those charged with the duty of administering, the funds contributed. The question of legislative power may, in this case, only be considered as, possibly, one of the guides to be resorted to in determining the legislative intent manifested by the law as written.

[2] There is no right of action at common law to recover for death occasioned by the wrongful act of another. 13 Cyc. 310. It is a right solely given by statute. A right such as this, which the Legislature gives, it may, of course, take away.

[3] The sole question, therefore, is: What was the legislative intent concerning this matter? Was it to end all suits at law for the injury or death of employés while engaged in certain occupations, no matter by whom injured or killed? Or, was it only to end such controversies between employer and employé?

Parts of the act, taken alone, would justify either conclusion. The title provides:

"An act relating to the compensation of injured workmen in our industries."

This shows a broad purpose—broad enough to include all injuries caused by any one to such "workman in our industries." Section 1 announces:

"The common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions."

This shows a narrower view; but, as shown by the parts of the act quoted above, it does not stand alone. Section 3 of the act, above quoted, provides that, when the deceased workman is killed "away from the plant of his employer," through the negligence of another "not in the same employ," his wife or children may elect whether to take, under the act, the industrial insurance therein provided for, or seek to recover from such other—that is, recover in an ordinary law action for such other's negligence.

In this case, the complaint shows that the deceased was—giving the ordinary meaning to the words—killed, not "away from," but at, the plant of his employer. Sections 3 and 5, in classifying the injuries by the place where they occur, both contain the expression:

"Whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer."

206 F.—15

"At the plant" may include less or more than "on the premises," depending on the relative extent of the two; but these two expressions show an intention not to limit the application of the law to real property boundaries.

The proviso, expressly preserving the right of action at law for the death of an employé, resulting from an injury "occurring away from the plant of the employer," clearly shows an intent to except from that provision of the act, abolishing all private controversies and all rights of civil action, what, but for such provision, would have been abolished, and, as the right of civil action is alone preserved when the injury occurs "away from the plant of the employer," then it is not preserved, but is abolished, when it occurs at the plant of the employer.

This intent is further manifested by section 5 of the act, providing for the payment of industrial insurance from the fund created by the act, which "shall be in lieu of any and all rights of action whatsoever against any person whomsoever," "except as in this act otherwise provided." The only relevant exception is, without doubt, the one referred to in the provision of the act providing:

"That if the injury to a workman occurring away from the plant of his employer is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case." Page 348.

Courts have often had occasion to point out that the intent may frequently more satisfactorily be shown by the nature of an exception than in any other way. This seems to be such a case.

Demurrer sustained.