[No. 17118.   Department One.   October 16, 1922.]

HOMER BOROUGHS, *Respondent,* v. JAMES C. DAVIS, *as Director General of the United States Railroad Administration etc., et al., Appellants.*[1]

MASTER AND SERVANT (121-2)—ACTIONS—REMEDIES UNDER WORKMEN'S COMPENSATION ACT—ELECTION—"PLANT" OF EMPLOYER. The foreman of a warehouse company was not injured away "from the plant" within the industrial insurance law, where it appears that he was called to examine an endless conveyor chain at a platform used for loading freight cars, and was standing near the conveyor, between the rails of the track, when cars were pushed on him by the train crew of the railroad company; and he can not elect to sue the railroad company, regardless of whether the platform was in the street or on railroad property, when it was under the exclusive control of his employer (PARKER, C. J., dissenting).

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered July 23, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a warehouse employee struck by a freight car. Reversed.

*Thomas Balmer* and *Edwin C. Matthias,* for appellants.

*James McCabe (Hyman Zettler,* of counsel), for respondent.

TOLMAN, J.—This is an action to recover damages for personal injuries. The case was tried to a jury, which returned a verdict in favor of plaintiff for $12,000, upon which, after the remission of $3,000, as the condition for denial of a new trial, judgment was entered, from which both defendants have appealed.

The accident complained of occurred at or near the plant of the Bellingham Warehouse Company, on the tracks of the Great Northern Railway, within the yard

[1]Reported in 210 Pac. 196; 212 Pac. 1043.

limits of the city of Bellingham, in December, 1918. Respondent was superintendent of the Bellingham Warehouse Company, in charge of its plant at that time and place. The particular warehouse under consideration is located on what is known as the ''Low Line,'' a side track which serves the warehouses next to the waterfront; and connected therewith is a loading platform used in transferring merchandise from the warehouse to the freight cars to be loaded. Respondent contends that this loading platform is located in a public street; but whether so located or on the private property of the railway company, it was used by the warehouse company at all times as a part of its plant in loading its merchandise into cars; and if actually within the limits of a dedicated street, the street was neither improved nor so used by the public as to interfere with due oversight by the warehouse company.

At one end of the loading platform was an incline upon which was operated an electrically driven endless chain, so that, in loading cars, the merchandise to be loaded was brought out in hand trucks from the warehouse to the foot of the incline, there the buckets or dogs on the chain engaged the trucks as they were pushed into position, and the chain furnished the motive power to carry the trucks to the top of the incline where the loads could be discharged into the cars to be loaded.

On the morning in question, the railroad switching crew had spotted two box cars at this loading platform, and immediately thereafter the loading crew of the warehouse company began preparations to load them. It was then discovered that the endless chain already referred to was broken, or out of order, and respondent was called; and while he stood on the railroad track engaged in looking under the platform examining the

chain to ascertain what was necessary to be done to it, and distant about three or four feet from the end of the nearest box car, the switch engine and its crew, without any warning, again entered the side track and sought to couple to the box cars which had been spotted at the platform but a few moments before. The engine struck the cars with sufficient force to move them backward and against respondent, who was in a stooping position, with his attention centered upon the examination of the chain, causing the injuries complained of.

A number of points are raised and argued at length, only one of which we find it necessary to now discuss, namely, were the injuries received under such conditions as to bring the case within the purview of the industrial insurance law, and bar the common law right to wage an action for damages against the wrongdoer?

Both parties seem to rely upon what has already been said by this court in *Carlson v. Mock,* 102 Wash. 557, 173 Pac. 637, and *Zenor v. Spokane & Inland Empire R. Co.,* 109 Wash. 471, 186 Pac. 849. In the *Carlson* case, it was held that one working upon the track of a street railway, laid on a public street used by the public as such, and far removed from the actual premises of his employer, was entitled to elect whether to take under the act, or sue the wrongdoer, and it was there held:

"But a liberal construction, having in mind the purposes of the act and the necessity of giving full force to the proviso, leads to the conclusion that the legislature never intended that the term plant should include more than that part of the employer's fixed property over which he has exclusive control, and cannot be applied to a public street or highway, though occupied by the employer for certain purposes, over which the general traveling public have at least equal rights with the employer, and over which the employer has no

oversight or method of protecting the employee from the negligent or wrongful acts of third persons.''

And the distinction was drawn between that case and the case of *Meese v. Northern Pac. R. Co.,* 206 Fed. 222, in the following language:

"But had the accident considered in that case occurred miles instead of feet from the employer's boundary line, and upon a public highway in a populous city, where the employer could exercise no oversight or control and could not maintain any sort of protection against the public generally, who had at least equal rights thereon, we apprehend the result would have been different. We think there is a narrow but plain distinction between that case and this upon the facts; but if not, we decline to follow Judge Cushman's rule.''

In the *Zenor* case, it was said:

"From the reasoning in that case *(Carlson v. Mock)* it would seem almost to follow as a matter of course that, in this case, the bridge upon the city street, of which the city is the owner, over which it exercises control, and may, for the purpose of repair, wholly exclude the public therefrom and take any and every necessary step to insure the safety of its employees while engaged thereon, must be held to be part of the plant or premises of the city.''

So here, the platform with its inclined approach, and mechanical equipment, no matter on whose real estate it was located, was a part of the fixed property of the employer over which, so far as these operations were concerned, the employer had exclusive control, and could have provided means for the repair of the chain which would have made respondent's presence on the railroad track wholly unnecessary and inexcusable. There was no interference by the public, or by the railroad company, with such control, and the hazard of the situation was as much within the over-

sight of the employer, and as inherent in the employment, as though the accident had occurred upon any other part of the employer's fixed premises. The right of election upon the part of the injured employee is a valuable right. We have no sympathy with the defense raised, as here, by the wrongdoer; and, where possible, would willingly preserve to the workman his statutory right of election; but as applied to the facts here involved, to so construe the act would, we fear, open wide the door leading to the defeat and nullification of the salutary purposes for which it was enacted. Some one of appellant's motions raising this defense should have been granted.

The judgment is reversed, with directions to dismiss the action.

MITCHELL, MAIN, and BRIDGES, JJ., concur.

PARKER, C. J. (dissenting)—I am unable to concur in the views of my brethren expressed in the foregoing majority opinion. I concede that the loading platform and the incline leading up to it were at and a part of the warehouse company's plant, because in the use and under the control of that company; but I cannot bring myself to the view that the railway company's track on which respondent was standing at the time he was injured by the act of its employees was either at or a part of the warehouse company's plant within the meaning of the statute invoked by counsel for the railway company. Respondent, it seems to me, was at a place away from the warehouse company's plant when injured, in the sense that he was then on ground under the control of the railway company, to wit, on its track. To my mind it is of no consequence that the railway company's track happened to be so situated that, when respondent was standing thereon, he was very close to the physical property of the plant

of his employer, the warehouse company. The great outstanding fact in this case is that respondent was injured by the act of the railway company's employees while on its own track (whether negligently or not need not be considered, in view of the majority opinion). This is a case peculiarly calling for a liberal construction of the statute favorable to respondent's right of election.

ON REHEARING.

[*En Banc.*    February 10, 1923.]

PER CURIAM.—Upon a rehearing *En Banc,* the majority of the court adhere to the Department opinion. The judgment of the trial court is therefore reversed with directions to dismiss the action.