[No. 20035.   Department Two.   January 6, 1927.]

JOSEPHINA COLACCI, *as Administratrix etc., Appellant,* v. CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY, *Respondent.*[1]

[1] MASTER AND SERVANT (55)—INJURY TO SERVANT—OPERATION OF RAILROADS—EMPLOYEE ON TRACK. It is not negligence to operate a switch engine backwards in the switch yards without a lookout upon the tender of the engine for the protection of an employee working in the switch yards.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered November 14, 1925, granting a nonsuit at the close of plaintiff's evidence, in an action for damages for wrongful death. Affirmed.

'Reported in 251 Pac. 880.

  *Wakefield & Witherspoon (Harry T. Davenport,* of counsel), for appellant.

  *Geo. W. Korte,* for respondent.

ASKREN, J.—This appeal is from a judgment of dismissal at the close of plaintiff's case in an action to recover for the death of a section hand, killed when struck by a locomotive of the defendant company.

The case made by the evidence is this: The decedent, Colacci, a section hand employed by the defendant company, on April 12, 1924, was engaged with four others and a foreman in repairing a track in the switchyard at Spokane. After lunch, the foreman took two of the men with him to another point, and instructed the decedent and the other two men to finish the work started in the morning. This involved spiking some ties and filling around them with dirt. After they had worked a half hour, the switch engine began its usual operations and one of the switchmen told the three men to quit working on the track, so all left their labor and went to a point of safety away from the tracks and sat down by a wall on the side of the yard. The switch engine continued its usual work of switching cars for about thirty minutes. Having completed a certain switching operation, it started backwards in an easterly direction. At that time, it was two hundred feet from the point where the men had previously been working, and where Colacci was afterwards killed. The engineer and fireman were in the cab and both looked backwards. Their view was obstructed the first one hundred fifty feet because of the fact that the tender, being in front of them, shut off their view, but they had a plain view of at least fifty feet between them and the point where the work had been going on, and their view, of course, was unobstructed further on for quite a distance. One of the switchmen rode on the

cowcatcher of the engine, and two of them were on the ground to assist in the switching work. As the engineer and fireman looked they saw the track was clear, and then proceeded to their manifold duties in operating the switch engine. The engine proceeded at about the speed a man walks, and when it had gone approximately two hundred feet it struck Colacci and killed him. The engine was stopped almost immediately upon striking him.

No one knows why Colacci went upon the track. The three men, after being warned to leave the track, had gone to the wall on the side of the yard as we have heretofore noted. One of the men went to a nearby place to get a drink. Another had nose bleed and was down on his knees when he looked up and saw Colacci walking towards the track with his pipe in one hand and his shovel in the other, and the engine approaching him. He called Colacci to warn him of the switch engine, but Colacci gave no sign of hearing, and walked upon the track and was struck.

It is apparent, of course, that Colacci was guilty of the grossest kind of negligence, but as the action was waged under the Federal Employers' Liability Act, negligence of the decedent would not bar a recovery, but would affect only the measure of damages.

The question, then, presented here for decision is this: Does the evidence disclose any negligence upon the part of the defendant?

[1] While the complaint charged various acts of negligence, such as failure to ring a bell, to have a foreman in charge of decedent at the time of his death, to maintain flags to protect the working crew and to have a lookout on the engine, the evidence was such that only the last act of negligence alleged, to wit: failure to have a lookout, appears to be stressed by

appellant. Indeed, the opening brief nowhere alludes to any other charge of negligence.

Our inquiry, then, can properly be directed to the question of whether it be negligence to operate a switch engine backwards in the switchyards without a lookout upon the tender of the engine. This question has in some form or other been presented to the Federal courts and, with seemingly common consent, has been answered contrary to appellant's contention, upon the ground that the dangers incident to the work in which appellant was engaged were so well known to him that he must have assumed the risk. Assumption of risk has not been abolished by the Federal Employers' Liability act in such cases as this, but still stands as a complete defense. *Seaboard Air Line R. v. Horton,* 233 U. S. 492, 34 Sup. Ct. 635; *Jacobs v. Southern R. Co.,* 241 U. S. 229, 36 Sup. Ct. 588; *Boldt v. Pennsylvania R. Co.,* 245 U. S. 441, 38 Sup. Ct. 139.

The most recent case involving rights similar to the one asserted here is *Chesapeake & O. R. Co. v. Nixon,* 271 U. S. 218, 46 Sup. Ct. 495. In that case, a section foreman whose duty it was to inspect and repair tracks was permitted to use a velocipede belonging to the defendant railroad in going to and from his work as well as to use it while performing his daily labors. While on his way to work he was struck by a train and killed. The supreme court of the United States reversed a judgment in favor of the plaintiff which had been affirmed by the supreme court of Virginia, and held that his use of the velocipede while on his way to work was the same as when actually at labor, and that at such a time he would assume the risk and must rely on his own observations for safety. The court said:

"For reasons that the jury found insufficient to excuse the omission the engineer and fireman of the train were not on the lookout, and the question raised

is whether as toward the deceased the defendant owed a duty to keep a lookout, or whether on the other hand the deceased took the risk.

"If the accident had happened an hour later when the deceased was inspecting the track, we think that there is no doubt that he would be held to have assumed the risk, and to have understood, as he instructed his men, that he must rely upon his own watchfulness and keep out of the way. The railroad company was entitled to expect that self-protection from its employees. *Aerkfetz v. Humphreys,* 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758; *Boldt v. Pennsylvania R. R. Co.,* 245 U. S. 441, 445, 446, 38 S. Ct. 139, 62 L. Ed. 385; *Connelly v. Pennsylvania R. Co.,* 201 F. 54, 119 C. C. A. 392, 47 L. R. A. (N. S.) 867; *Davis v. Philadelphia & R. Ry. Co.,* (D. C.) 276 F. 187; *Pennsylvania R. R. Co. v. Wachter,* 60 Md. 395; 4 Elliott on Railroads, (3d ed.) Sec. 1862."

The case of *Davis v. Philadelphia & R. R. Co., supra,* where a trackwalker's administratrix was denied recovery for the death of her intestate, who was killed by a train while endeavoring to make some repairs near a station on the main line of the defendant's railroad, presents some observations that are peculiarly applicable here:

"The evidence is clear, and plainly discloses that there was nothing unusual in the operation of the train that injured Davis. There was no violation of a statutory requirement, nor was there failure of compliance with any orders or recognized custom or rule adopted for the safety and protection of employees. Thus, in the absence of evidence showing that those in charge of the engine were aware of Davis' presence on the track where he was injured, or, having discovered him, recklessly ran him down, they should not be held guilty of negligence. To hold the contrary would indeed unreasonably burden those charged with the grave and responsible duty of operating the instruments of conveyance by rail. It would remove the entire responsibility of caring for the safety of those employed upon

the track, and place it upon the shoulders of those having to do with the operation of the engine and train, involving attention to signals of every degree of importance, and entirely relieve those who have nothing but their own safety at stake.''

Appellant places reliance upon *Scharf v. Inland Empire R. Co.*, 92 Wash. 561, 159 Pac. 797, where a naked licensee. crossing the tracks of the defendant company was killed. The decision states that there was some negligence in running the engine without sounding its bell, or having some one in position on the engine to keep a forward lookout. But the facts in the case, which need not here be set out in detail, were sufficiently different than those in the case at bar, and there was no question of assumption of risk, for the defendant there was not in the employ of the railroad.

Nor is the case of *Southern R. Co. v. Smith,* 205 Fed. 360, of controlling importance here. In that action a switch engine was operated under circumstances that a duty to warn might be properly inferred by the jury, because of unusual and exceptional circumstances tending to prevent the decedent from having knowledge of the presence of the engine.

But if there be any contrariety of opinion as to the facts and the holding therein there cannot be any doubt that the case of *Chesapeake & O. R. Co. v. Nixon, supra,* in effect, overrules it as any authority, if it be one, in the present case.

Other cited cases have been noted, but need not be referred. to in this opinion, for the facts in each case vary so completely from those involved here that they do not call for a different conclusion than we have reached.

The judgment is affirmed.

TOLMAN, C. J., MAIN, MACKINTOSH, and BRIDGES, JJ., concur.