[No. 21110. Department One. October 11, 1928.]

DAVID HARVEY, *Respondent*, v. CHAS. R. McCORMICK
LUMBER COMPANY OF DELAWARE, *Appellant.*[1]

[1]Reported in 271 Pac. 65.

*Roberts & Skeel, W. J. Truscott, Elwood Hutcheson,* for appellant.

*G. F. Vanderveer* (*Everett C. Ellis,* of counsel), for respondent.

FRENCH, J.—By a jury verdict, the respondent was awarded damages in the sum of twenty thousand dollars for personal injuries sustained while working as an employee of the Grinnell Company, an independent contractor engaged in installing a sprinkler system in the appellant's saw mill.

In this saw mill was a wide passageway, and at the time of the injury, respondent was in this passageway, stooping over engaged in sorting out certain apparatus which it was necessary for him to use in helping to install the sprinkler system in accordance with the plans. Adjacent to this passageway was a tramway used by the appellant to transport lumber to its re-saw department. While respondent was bending over thus engaged, a car heavily loaded with lumber and, according to certain testimony, improperly loaded, was pushed down the tramway and just as it reached a point opposite respondent, the load collapsed and a large portion of it fell upon him, crushing him to the floor. There is testimony tending to show that respondent's

occupation and the noise of the mill were such as to prevent him from hearing the tram car, and that no warning was given either of the proximity of the load of lumber or of its unsafe condition.

The Grinnell Company was contributing to the workmen's compensation fund, and a few days after the injury, while respondent was in the hospital, there was presented to him a claim for compensation, prepared on one of the forms printed by the department of labor and industries, which he signed. There were paid to him four monthly checks and certain other payments were made by the department to his physician, and for his hospital account. Thereafter respondent was advised to and did consult an attorney, returned the money to the department of labor and industries, notified the department that, in lieu of accepting compensation under the industrial insurance act, he elected to pursue his remedy against the defendant, and was duly notified by the department that his claim for compensation would be held in abeyance pending the determination of this action.

Respondent, at the time of the accident, was twenty-six years of age, had a life expectancy of more than thirty-eight years, was actually earning six dollars per day, and within two months would have completed his apprenticeship at which time his regular pay would have been ten dollars per day. There is also testimony from physicians that never again will he be able to engage in any kind of manual labor.

Appellant assigns as error that the defense of assumption of risks was withdrawn from the jury. It must be remembered that this is not a case arising out of the relationship of master and servant. No contractual relationship of any kind existed between respondent and appellant. Assumption of risk differs from contributory negligence, although in many cases

the terms seem to be used somewhat interchangeably. Assumption of risk arises out of contractual relationship; and there being no contractual relationship existing between the appellant and respondent, the defense of assumption of risk was properly withdrawn from the jury. *Chicago & E. R. Co. v. Ponn,* 191 Fed. 682, 112 C. C. A. 228; *Choctaw O. & G. R. Co. v. O'Nesky,* 6 Ind. Terr. 180, 90 S. W. 300; *St. Louis I. M. & S. R. Co. v. Brogan,* 105 Ark. 533, 151 S. W. 699; *Colacci v. Chicago, Milwaukee & St. Paul R. Co.,* 141 Wash. 587, 251 Pac. 880.

■ Appellant also complains of the refusal of the court to give certain instructions regarding proximate cause, covering apparatus in common use, and customary operation, but we think an examination of the record clearly indicates that the jury were properly instructed on the question of proximate cause; and that the requested instruction regarding apparatus and methods used and employed by the appellant was clearly erroneous, because the requested instruction as worded would make the liability of the appellant depend not upon reasonable care under all of the circumstances of the particular case, but rather upon whether the methods employed were in common and ordinary use, without regard to whether the "customary way" came up to the standard of reasonable care. We think our observations in the case of *Carlson v. Wilkeson Coal & Coke Co.,* 19 Wash. 473, 53 Pac. 725, are pertinent to this question.

See, also, *Texas Pacific R. Co. v. Behymer,* 189 U. S. 468:

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

Other requested instructions were, we think, fully covered by the court in the instructions given.

■ On the question raised by appellant as to the excessiveness of the verdict, it may be said at the outset that a verdict of twenty thousand dollars seems to be somewhat large in a personal injury case. In this case, however, the respondent is a young man, having a long life expectancy; at the time of the accident he was earning six dollars per day, and in the natural course of events within two months he would have been earning ten dollars per day. There is testimony in the record from which the jury might well be warranted in believing that never again will this young man be able to earn his living by performing manual labor. He has reached the age of twenty-six years. He sustained, together with other injuries, a severe crushing and fracture of the first lumbar vertebra. Our attention has been called to nothing in the record indicating that the jury was influenced by passion or prejudice in any degree, and the amount awarded is not so far out of proportion to the injuries received as to justify this court in reducing it, particularly in view of the fact that the trial court, after hearing all the testimony, permitted the verdict to stand.

■ The most serious question raised by appellant is that, by filing a claim under the workmen's compensation act and accepting certain payments thereunder, respondent had thereby elected to accept such compensation, and is precluded from maintaining this action. Our workmen's compensation act provides:

"Provided, however, that if the injury to a workman occurring away from the plant of his employer is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of

action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case. Any such cause of action assigned to the state may be prosecuted, or compromised by the department, in its discretion. Any compromise by the workman of any such suit, which would leave a deficiency to be made good out of the accident fund, may be made only with the written approval of the department." Rem. Comp. Stat., § 7675.

Our act also provides, as a jurisdictional requirement to making claim for compensation, that "No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the right thereto accrued." Rem. Comp. Stat., § 7686.

The court instructed the jury that the mere signing of the claim did not operate to bar the prosecution of this action. We think, in view of the provisions of our statute, that the correctness of this instruction is beyond question. If respondent in this case should ultimately recover from the appellant less than the amount which would have been paid to him under the provisions of the workmen's compensation act, then the deficiency would be paid to him by the department, providing he had complied with the jurisdictional provisions of the Code as set forth in § 7686, *supra.*

Respondent, after making claim for compensation, received certain moneys from the state. The testimony clearly indicates, however, that, at the time of the receipt of the money, he had no knowledge of his right to pursue any other remedy. He did not comply with that condition of the statute relative to assigning his claim to the state. Promptly upon learning

of his right to sue the appellant, he notified the department of his intention so to do, and made complete restitution to the state of the moneys he had already received, all with the apparent acquiescence and consent of the department. The question then remains, Can a man be said to have elected between two inconsistent remedies if he does not know of the existence of both?

In *Hicks v. Peninsula Lumber Co.*, 109 Ore. 305, 220 Pac. 133, the court said:

"In conformity with the general rule applicable where a party is required to make an election between alternative remedial rights, the election which an injured workman is required to make under the provisions of section 6616, Ore. L., will not be presumed where the workman has acted in misapprehension of his legal rights and in ignorance of his obligation to make an election, especially when, as in the instant case, no other person's rights have been prejudicially affected thereby."

In the instant case, the court submitted the question of an election to the jury as a question of fact, under an instruction which seems fully and fairly to state the law. The instruction follows closely the law as announced in *Barton v. Oklahoma, K. & M. R. Co.*, 96 Okl. 119, 220 Pac. 929, a well considered and instructive case; and we are content to accept the reasoning of that case as authority for the instruction given, unless the court can say, as a matter of law, that an election had been made.

■ Appellant contends that respondent had full knowledge of all the facts at the time he accepted compensation, but was mistaken only as to his legal rights, and that his ignorance of the law in this particular can not be excused. That ignorance of the law is no excuse, is certainly true as to all matters within the jurisdiction of the criminal courts. It is also true

as to mistakes which have led third parties to act in such a way as to bring about some detrimental change in position; but the maxim has many limitations. Mr. Pomeroy, in his work on Equity Jurisprudence, vol. 2, § 849, states:

"Mistakes, therefore, of a person with respect to his own private legal rights and liabilities may be properly regarded,—as in great measure they really are,—and may be dealt with as mistakes of fact. Courts have constantly felt and acted upon this view, though not always avowedly."

And in the same section:

"Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract or personal *status,* and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

"It is a general rule that a mistake of law pure and simple is not adequate ground for relief. But there are well-defined exceptions to this rule. Without undertaking to discuss the many phases of the question, it seems that a mistake by a party as to his antecedent existing legal right, as distinguished from a mistake as to the legal import of the act done, is one which should be and is recognized as a ground for equitable relief from the consequences of such mistake, where the mistake can be rectified without injury to the rights of others." *In re McFarlin,* 9 Del. Ch. 430, 75 Atl. 281.

"But the doctrine, whether applied in practice on the common law or on the equity side of the court, depends not upon technical rules, but upon principles of equity and justice, and upon actual intention. An

election made in ignorance of material facts is, of course, not binding, when no other person's rights have been affected thereby. So if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed." (Citing many cases) *Watson v. Watson,* 128 Mass. 152.

See, also, *Renard v. Clink,* 91 Mich. 1, 51 N. W. 692; *Anderson v. Risdon-Cahn Co.,* 13 Wash. 494, 43 Pac. 337.

■ An election to accept compensation from the state under the provisions of the statute above quoted requires an assignment of the claim against the third party against whom such right of action exists. No such assignment was made in this case; and conceding that, where an election has actually been made, assignment would follow as a matter of law, yet the state has here consented to and has held respondent's claim in abeyance and permitted him to return the money received and maintain this action in his own right. Regardless of respondent's course of conduct, the cause of action here litigated belonged either to respondent or to the state. Appellant was and is answerable either to respondent or to the state. In this particular, our industrial insurance act differs from some we have examined. There can be no election under our law without an assignment, either actual or by operation of law, of the cause of action. The law of the state of Oregon is identical with ours in this particular, and the question here presented was decided adversely to appellant's contention in *Hicks v. Peninsula Lumber Co.,* and also in *Barton v. Oklahoma, K. & M. R. Co., supra.*

Appellant relies principally upon our decision in *Anderson v. Bauer,* 146 Wash. 594, 264 Pac. 410. The

facts in that case, however, clearly distinguish it from the instant case. The facts stated are:

"Prior to instituting this suit, the plaintiff filed his claim with the industrial insurance commission for compensation. After this action was instituted, he received two vouchers in payment of his claim, which he cashed, retained the proceeds and signed a final approval of settlement of his claim against the state fund."

All that was held in that case was that the plaintiff, having the choice of two remedies, each against a different party, could not pursue them both and recover on both. Having recovered from the state and settled his claim, he was barred from recovering from a third party. The jury, by its verdict in this case, has found that respondent, at the time he made claim against the state and accepted compensation, had no knowledge of his right to sue appellant, and that he was ignorant of facts necessary and material to the prosecution of such a suit. The observations of this court in *Boroughs v. Davis,* 121 Wash. 557, 210 Pac. 196, 212 Pac. 1043, and *Carlson v. Mock,* 102 Wash. 557, 173 Pac. 637, and *Burns v. Johns,* 125 Wash. 387, 216 Pac. 2, are, while not strictly in point, somewhat applicable to the facts of this case. We think the entire question of election was properly submitted to the jury as a question of fact, and cannot be decided by the court as a matter of law.

Judgment affirmed.

FULLERTON, C. J., PARKER, TOLMAN, and MITCHELL, JJ., concur.