[No. 21594. *En Banc.* February 7, 1929.]

JOHN McABEE, *Respondent,* v. W. T. FRENCH *et al., Respondents,* ARCADE BUILDING & REALTY COMPANY *et al., Appellants.*[1]

[1]Reported in 274 Pac. 713.

*Roberts, Skeel & Holman,* for appellants.

*Kenneth Durham* and *John J. Kennett,* for respondent John McAbee.

HOLCOMB, J.—The amended complaint of respondent alleges that, at about 8:15 a. m. on April 25, 1927, respondent had parked his truck, headed north, on the east side of an alley or street, called Post street, between University and Union streets in Seattle, and was engaged in putting a block behind the rear wheel to prevent the possibility of his truck starting accidentally on the grade; that one Kelly, a truck driver of appellants, driving north in this alley, saw respondent so engaged and standing close to the left side of his truck, but nevertheless Kelly negligently con-

tinued on, instead of stopping, and negligently drove so close to the parked truck of respondent that the truck driven by Kelly struck and rolled respondent between the two trucks, permanently injuring him; that, besides various contusions and bruises, respondent suffered a dislocated hip, a back sprain, nervous shock, a sacro-iliac sprain and a fracture of the transverse process of the first lumbar vertebra. Total incapacity and loss of time was alleged for twenty-eight days, permanent injury, with a life expectancy of 37.43 years, amounting to $10,000, mental suffering and physical pain and future such suffering, medical and surgical expenses, and future like sums to be incurred, making a total of $11,740, for which he demanded judgment.

Separate answers were interposed by each of the three sets of defendants, each specifically denying all material controversial allegations of the amended complaint. Defendants Arcade Building & Realty Company and Teufel & Carlson, in their respective answers, each made affirmative allegations to the effect that respondent was subject to the workmen's compensation act and had made a certain election thereunder. These allegations were denied by the reply.

After a trial by jury, a verdict of $7,500 was returned against appellants in favor of respondent, and a verdict relieving French and wife from liability.

On motion for judgment n. o. v., or in the alternative for a new trial, the court denied the motion for judgment n. o. v., and on the motion for new trial, reduced the amount of the verdict to $2,500, or in the alternative ordered a new trial, which reduction respondent elected to accept. Thereupon judgment was entered against appellants for $2,500, from which this appeal is prosecuted.

The issues, together with instructions and requested

instructions relating to the same, concerning the application of the industrial insurance act and the election of respondent thereunder, are confessedly eliminated by our decision adverse to the contentions of appellants in *Harvey v. McCormick Lumber Co.,* 149 Wash. 368, 271 Pac. 65.

The only other question which is apparently seriously argued by appellants, is whether or not respondent was guilty of contributory negligence, as a matter of law, as the proximate cause of his injury, precluding recovery.

In connection with that contention, appellants argue that respondent was guilty of contributory negligence as the proximate cause of the injury in two respects:

"(1) He violated a city ordinance and such violation directly contributed to his injury.

"(2) He had a last clear chance to have avoided injury and did not avail himself thereof so as to prevent his being hurt."

Two sections of Ordinance No. 49185, the traffic code of Seattle then in effect, are relied upon as follows:

"Section 67: It shall be unlawful for any person to stand or park a vehicle in any alley except while actually loading or unloading the same, or to stand or park a vehicle on or upon any bridge or trestle or approaches thereto except east side of Fourth Avenue South, from Seattle Boulevard to Holgate street; or to stand or park a vehicle in a place established as a terminus—for Municipal Railway busses."

"Section 79: It shall be unlawful to stand or park vehicles on the north or east side of any street or avenue on which the width of the paving is twenty-five feet or less between curbs."

Maps introduced by the parties show that the portion of Post street, so-called, between University and Union streets in Seattle, is only sixteen feet in width, is paved with balsam blocks, with a grade of 8.4 per

cent uphill toward the north. About 164 feet north of University street, a tunnel leads from this street or alley and under First avenue to the sub-basement of a building which appellants Teufel & Carlson were erecting on a cost-plus basis for appellant Arcade Building & Realty Company. The sixteen-feet width of the so-called street is paved from building to building, without sidewalks, the surface being concave from each side toward the center. There are steam and drainage-pipes outside the buildings, and the distance between the two buildings south of the tunnel entrance "is a straight alley unobstructed all the way," according to the engineer who testified for appellants. The buildings fronting First avenue have a considerably higher elevation and have their sub-basements backing on this alley. South of the viaduct, along University street and ending there, Post street is a thirty-six foot paved street. That accounts for the use of the words "alley" and "street" by the witnesses, in referring to the place where the accident happened, indiscriminately. Obviously, the place where the injury happened is not a street, but an alley. In *Ferguson v. Yakima,* 139 Wash. 216, 246 Pac. 287, a way twenty feet in width was designated as an alley.

It seems plain, therefore, that although Post street, at the place of the accident, is undoubtedly a public way, it is not such a public thoroughfare as is commonly known and called a street or avenue.

The evidence on behalf of respondent, and upon which the jury were warranted in finding in his favor, shows that he was employed as a truck driver for Galbraith & Co., and, on the morning in question, had a large mortar box to deliver to appellants Teufel & Carlson at the Arcade tunnel. He entered the alley in question from University street and, on reaching the tunnel, found another truck unloading inside, so

that he dropped back against the building and stopped with the front of his truck facing uphill, or north, eight or ten feet south of the tunnel, so that there would be room for the man inside to get out when he was through unloading. He intended, after parking the truck, to go into the tunnel to see where they wanted the mortar box, and disliked to leave the truck on such a steep grade without blocking it.

He saw a block of wood across the alley, eight or ten feet away, and as he swung off his truck to get the block, he heard another truck and, looking south, saw the truck driven by Kelly just as it swung off University street north on the alley, 164 feet from the mouth of the tunnel, near which his truck was parked. When he got back with the block, Kelly's truck was coming up the center of the alley about fifty feet from the rear of respondent's truck, and he concluded that Kelly was going to drive up behind him and stop, and worked with that in mind until after he was injured. He knew that Kelly could stop on that upgrade almost in his tracks. Kelly was looking right at him. In fact, Kelly himself admitted, while on the stand, that he was looking at respondent for twenty-five or thirty feet before respondent was struck, and that he, Kelly, could stop his truck in three feet. Respondent, seeing that Kelly was looking at him and that he had ample distance in which to stop his truck, proceeded to block the rear wheel of his truck, to do which he did not need to get clear down under it, but only part way. When he had finished blocking the wheel, he looked up and saw the other truck was on him, coming at the rate of seven or eight miles an hour, so that he swung around and up against his own truck to make himself as narrow as possible. The front of the truck passed him, but the body, about four feet from the end, caught him by his left hip and rolled him

between the trucks to the end of Kelly's truck body, where he fell.

He thought that Kelly was coming up behind him to park and wait his turn at the tunnel. He heard no whistle sounded by Kelly. The maximum possible clearance space between the bodies of the trucks was very small, being not to exceed probably two feet and one inch. Both Kelly and respondent knew that the concave surface of the pavement would tend to cause a truck to move toward the center and thus reduce the possible passing space. Respondent believed that Kelly was coming into the alley with his truck on some business connected with the job in the tunnel, and it was true that Kelly's errand was into the tunnel.

Appellants lay much stress upon the fact that respondent parked his truck on the east side of Post street, on which the paving was less than twenty-five feet in width, and not while "actually loading or unloading the same," as prohibited by § 67 of the ordinance.

Although respondent was not in the act of unloading the mortar box in the tunnel where it was to be delivered, that was his only errand there and he had but just arrived at the mouth of the tunnel. He had not parked on any street or avenue, but was merely waiting the opportunity to finish his errand by delivering the mortar box in the tunnel. The words "actually engaged," in common parlance, simply mean the opposite or antithesis of "seemingly," or "pretendedly," or "feignedly engaged." 1 Words & Phrases, 172; 1 Bouvier 130; 1 C. J. 1187.

While respondent was not at the instant actually unloading the mortar box in the tunnel where he was directed to unload it, he was there for no other purpose and was simply momentarily detained therefrom by the exigencies of the work. We do not think the

narrow definition should be given the words used in the ordinance contended by appellants.

Appellants themselves requested an instruction (No. 17) referring to the place of the accident as an alley, and we think are not now in position to claim that the refusal of the court to give a contradictory instruction on § 79, relating to streets and avenues less than twenty-five feet in width between curbs, was error.

Under the facts shown there was sufficient evidence to warrant the jury in finding that respondent was not negligent, but if there were any facts tending to show his negligence, as the evidence was in conflict, the weight and credibility thereof was for the jury and the jury resolved them in favor of respondent.

Cases cited by appellants upon this question establishing the principle that it is contributory negligence *per se* to rush into the path of a swiftly moving vehicle, or to pass without looking upon a street railway or railway track, are obviously not in point in such case as this.

In this case, according to all the evidence, both respondent and the driver of appellants' truck saw each other. According to the driver of appellants' truck, he only saw respondent for a distance of twenty-five or thirty feet, and, according to respondent's evidence, for a distance of about fifty feet; but whichever was true—and which was for the jury to say—Kelly, appellants' driver, declared he could stop in three feet. Instead of doing that, he went ahead and tried to squeeze by respondent, who was in a position from which he could not escape.

The situation thus shown was worse than that in *Burns v. Johns,* 125 Wash. 387, 216 Pac. 2, where an accident occurred in daylight, at a time when there was little or no traffic on the street, and the injured person

could only be seen for a distance of about thirteen feet. He was also at a place where he had a right to be, although his work there was but temporary. We there held that the case presented a question for the jury as to the contributory negligence of the injured party. See, also, *Morrison v. Conley Taxicab Co.*; 94 Wash. 436, 162 Pac. 365; *Collins v. Nelson*, 112 Wash. 71, 191 Pac. 819; *Wickman v. Lundy*, 120 Wash. 69, 206 Pac. 842.

Even if the place where respondent stopped his car, temporarily, was a street or avenue, or even if respondent was not at the time actually engaged in unloading his truck, the purpose for which he was there, we do not consider that appellants can complain of the lack of submission of the terms of both sections of the ordinance to the jury, because their driver Kelly knew all the time, from the time that he entered the alley, just where respondent's truck was parked, saw respondent's truck and respondent himself at least for fifty feet, according to his evidence, and the place of parking of respondent's car was not the proximate cause of the accident.

"Where the negligence of defendant is the proximate cause and that of the person injured is the remote cause, an action may be maintained, although plaintiff was not entirely free from fault. Where the act or omission of the person injured amounts merely to an antecedent occasion or condition of the injury remote in the sense of causation, it is not contributory negligence." *Richardson & Holland v. Owen*, 148 Wash. 583, 269 Pac. 838.

In that case also there was an alleged violation of a municipal ordinance, which was not the proximate cause of a boiler explosion.

Plainly, also, if there was any last clear chance to avoid the injury, under the facts shown, it lay upon Kelly. We have held that, where the peril of one on

the highway is actually discovered and should be appreciated by the operator of a vehicle, there arises a new duty to exercise all reasonable care to avoid injury, and the failure to exercise such care, if it results in injury, will render a defendant liable. *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943. See, also, *Sasse v. Hale Morton Taxi & Auto Co.*, 139 Wash. 359, 246 Pac. 940; *Thompson v. Collins*, 139 Wash. 401, 247 Pac. 458; *Johnston v. Elmore*, 141 Wash. 293, 251 Pac. 558; and *Lung v. Washington Water Power Co.*, 144 Wash. 676, 258 Pac. 832.

All the instructions given and those requested and denied have been examined. Many of the errors based upon the denial of the requested instructions and the giving of some of the instructions are not argued, except by mere general statements. We find that the trial court gave clear and correct instructions upon the questions of negligence, contributory negligence, and last clear chance. Although the instruction on contributory negligence is criticised as containing erroneous words, its language is substantially the same as an instruction sustained by this court in *Reed v. Spokane*, 21 Wash. 218, 57 Pac. 803.

Other instructions criticised, when read in context, are clearly correct and most of the instructions requested, other than those upon the issues as to the industrial insurance act, were given in effect in the instructions given by the trial court.

We find no reversible error and the judgment is affirmed.

MITCHELL, C. J., PARKER, MAIN, TOLMAN, FRENCH, BEALS, and FULLERTON, JJ., concur.