CHAPIN E. MANNING, APPELLEE, v. LOUIS W. POMERENE, APPELLANT.

FILED APRIL 14, 1917. No. 20008.

1. **Master and Servant:** WORKMEN'S COMPENSATION ACT: ACCIDENT. Plaintiff, who was employed to attend to and fire a steam-heating boiler, was compelled to use a narrow passageway when inspecting the steam gauges. Two iron beams lay on the boiler, and the ends projected over the passage. Plaintiff attempted to move them out of the way by pushing with his body, when he felt pain in his stomach, became faint and weak, was compelled to cease work and be assisted home. On the third day afterward he vomited blood, and afterwards had a slight paralytic stroke. *Held,* that his condition was the result of an accident as defined in section 3693, Rev. St. 1913, and that the injury arose out of and in the course of his employment.

2. ——— : ——— : Appeal: Conflicting Evidence. The evidence as
to whether the present disability of the plaintiff was caused by
the accident being conflicting, and there being sufficient testi-
mony to that effect to support the finding of the district court, its
judgment will not be disturbed.

Appeal from the district court for Lancaster county:
Willard E. Stewart, Judge. *Affirmed.*

*Strode & Beghtol,* for appellant.

*Charles S. Roe* and *G. P. Putnam, Jr., contra.*

Letton, J.

Action under the workmen's compensation act. The
plaintiff was a steam-fitter's helper employed by the de-
fendant, who was engaged in the heating and plumb-
ing business. While engaged in attending to a boiler for
the defendant, the plaintiff attempted to move two steel
"I" beams resting about three feet from the floor by push-
ing against the beams with his body. He did this once or
twice, when he felt faint and sick, and was compelled to sit
down. He was unable to work during the remainder of the
day. He worked the next day at overseeing some other
men. The next day was Sunday. He felt sick and faint
during this time, but was able to take a walk that day.
On Monday he felt worse, and that night he vomited blood,
and has since been unable to work. He was paid compen-
sation for part of the time, but afterwards defendant re-
fused to make further payments, on the ground that the
disability from which plaintiff now suffers is not due to
the injury to which he ascribes it. The district court
awarded him $678 as arrears, and $9.60 a week for 300
weeks, and $7.60 a week for the remainder of his life as
compensation. From this award the defendant appeals,
insisting (1) that the removal of the beams was not within
the scope of plaintiff's employment; (2) that plaintiff did
not suffer an "accident" as defined in the statute, and that
his indisposition or disability was caused by senile arterio
sclerosis; (3) that he has fully recovered from the effect
of the injury, even if it had been caused by accident.

As to the first point we are satisfied that the injury or accident, if any there was, occurred in the course of plaintiff's employment. It seems there was a narrow passageway in which he was required to walk in order to reach the gauges showing the steam pressure in the boiler. The end of these beams projected over and obstructed the passageway, and, while there were steam-fitters near whom he might have called from their work to move the beams far enough to allow him to pass, it was perfectly natural and to be expected that in order to perform his duties he should move or attempt to move them himself. They were lying upon a projecting part of the boiler, and the testimony is that beams resting upon iron, as these were, usually slide easily when pushed. In our view he was acting within the scope of his employment.

As to the second point, defendant's argument is that under the definition of the word "accident" in section 3693 Rev. St. 1913, no accident happened. The statute provides: "The word 'accident' as used in this article shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." It is insisted that no "unexpected or unforeseen event, happening suddenly and violently," occurred; that sickness arising from the placing of his body by plaintiff against the beams and surging back and forwards could not reasonably be said to be "an unforeseen event;" and that it did not happen suddenly and violently except as it was produced by the plaintiff himself. It is said that this language is "clearly meant to limit recoveries to accident such as the breaking of machinery, or the unexpected cutting or wounding of employee's person by some breaking or falling or exploding of apparatus, machinery, or tools." To hold this would unduly limit the meaning of this clause. The unforeseen event was the straining, weakening or lesion of the blood vessels of the brain or stomach, and this was an unforseen event happening suddenly. It

101 Neb.—9

is also said that no "objective symptoms" of an injury appeared at the time, and· that these elements are essential. We agree with this argument so far that the accident must produce "at the time objective symptoms of an injury," but the difficulty is as to what constitutes objective symptoms. Defendant's idea is that by objective symptoms are meant symptoms of an injury which can be seen, or ascertained by touch. We are of opinion that the expression has a wider meaning, and that symptoms of pain, and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute.

Plaintiff testifies that when he pushed against the beams he felt something give way in his stomach; that it made him sick and faint, and he was compelled to sit down. His son was working there as foreman, and, when told he was hurt, he came and stayed with him for some time, and assisted him to go home. He was sick, nauseated and weak, and had soreness and pain across his stomach, which kept increasing. The next morning he went to work but felt badly. He did not attempt to do anything except oversee a few men who were covering piping. He ate no dinner that day. His son again assisted him home. That night he was still sore and lame. Sunday he was still weak, and was unable to work on Monday. That night while in bed he was nauseated and vomited blood; afterwards he had hiccoughs that lasted for about two weeks, and was very weak, and soon afterwards had a slight paralytic stroke that affected one arm and leg. In addition to the testimony of plaintiff himself on this point, his son testifies that when he saw him just after the event he was sitting with his head bowed in his hands, and his face was pale and drawn. A workman testified that he saw plaintiff lift, and then go and sit down, bent over, holding his stomach. He said that he had hurt himself. "He kind of fainted away and came to." Another witness says he saw

him about 10 or 15 minutes after he lifted the beam; that he was sitting doubled over apparently in great pain. These facts seem to establish the occurrence of an accident for which the statute allows compensation. *LaVeck v. Parke, Davis & Co.,* 190 Mich. 604; *Madden's Case,* 222 Mass. 487; *Duprey's Case,* 219 Mass. 189; *Forrest v. Roper Furniture Co.,* 187 Ill. App. 504.

A very material question in the case is whether the disability from which the plaintiff is now suffering resulted from the accident. As to this the medical expert testimony is in conflict. Plaintiff was 63 years old at the time of the accident. He weighed about 195 pounds. His weight fell to 135 pounds soon afterward, and is now about 140 or 145. In the summer of 1915 he was examined by a number of physicians while in New York state. The substance of their testimony is that the condition in which the plaintiff was at that time was or might be the result of the injury he suffered in February of that year. His attending physician in Lincoln testified to the same effect. Two physicians testify for the defendant that the plaintiff's condition is evidently the result of a progressive arterio sclerosis, and could not have been the result of the injury. The physicians all agree that plaintiff is permanently disabled. In this state of the medical testimony there is sufficient to sustain the findings of the district court that the disability is the result of the accident.

·JUDGMENT AFFIRMED.

· CORNISH, J., not sitting.