[No. 16934.    Department One.    October 16, 1922.]

ALFRED TWEDT et al., *Respondents,* v. SEATTLE TAXICAB COMPANY, *Appellant.*[1]

MUNICIPAL CORPORATIONS (380, 384)—USE OF STREETS—VIOLATION OF LAW—PROXIMATE CAUSE. Plaintiff's cutting a corner in violation of an ordinance, being of itself negligence, bars a recovery for a collision with defendant's taxicab, also negligent through exceeding the speed limit, unless defendant's act was the direct and proximate cause of the accident and plaintiff's act did not contribute thereto, but this requires a very clear showing on the part of the plaintiff, the presumption being that the accident was due to the combined fault of both.

SAME (380, 384). The burden on the plaintiff is not met in such a case, where it appears that plaintiff entered the intersection near the center of the street, and cut the corner without slacking speed or changing his course, and had he been in his lawful place, the defendant had greater opportunity to and probably would have been able to avoid the collision.

[1] Reported in 210 Pac. 20.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered June 4, 1921, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for injuries from an automobile collision. Reversed.

*J. Speed Smith, Henry Elliott, Jr.,* and *Wm. A. Gilmore,* for appellant.

*Jas. E. Seargeant* and *William Sheller,* for respondents.

FULLERTON, J.—The respondents Twedt brought this action against the appellant, Seattle Taxicab Company, to recover in damages for injuries arising out of a collision between their automobile and a taxicab of the appellant. From a verdict and judgment in favor of the plaintiffs, the taxicab company brings the case here.

The record discloses that East Madison street is one of the main highways in the city of Seattle, extending from the water front on Elliott Bay in a general northeasterly direction to Madison Park on Lake Washington. The street has upon it a double-track street car line, and is subject to a heavy vehicle traffic. Twenty-fifth Avenue North is a street of the same city extending north and south, crossing East Madison street at an angle of about forty-five degrees. At the time of the collision, a line of bill boards extended back from Twenty-fifth Avenue North, on the south side of East Madison street, for a distance of some one hundred and fifty feet. These bill boards were some eleven feet in height and so obstructed the view that one driving easterly on East Madison street could not see approaching traffic coming from the south on Twenty-fifth Avenue North, and likewise prevented one driving

north on the latter street from seeing approaching traffic coming from the west on East Madison street.

At the time of the collision, the appellant's taxicab was being driven easterly on East Madison street. While there is a conflict in the evidence, there was evidence which would warrant a jury in finding that the cab was then being driven considerably in excess of twenty miles per hour. As the cab approached the intersection of the street with Twenty-fifth Avenue North, the respondents drove their automobile from the south on that avenue into the intersection. There is no dispute in the evidence as to the course the automobile was driven just prior to and after it entered the intersection. All of the evidence shows that, on approaching the intersection, the automobile driver drove near the center of the avenue and turned to the left as he entered the street, passing a considerable distance to the left of the center of the intersection of the streets.

The taxicab and automobile collided as the front of the automobile was near the center line of East Madison street. Just prior to the collision, the taxicab was traveling on the right side of the center of the street. As the driver saw the incoming automobile, he turned to his left and endeavored to stop; the vehicles, however, collided, the right front wheel of the taxicab striking the left front wheel of the automobile. The driver of the automobile, after seeing the approaching taxicab, did not endeavor to stop, nor did he change his rate of speed nor the direction of his course.

At the time of the accident, both the state law and the ordinance of the city of Seattle limited the rate of speed at which a motor vehicle could be driven over the city streets to twenty miles per hour. The statute, Laws of 1919, p. 123, likewise provided:

"Any person operating a motor or other vehicle shall, at the intersection of public highways, keep to the right of the intersections of the centers of such highways when turning to the right and pass to the right of such intersections when turning to the left."

Ordinance No. 39720 of the city of Seattle provides:

"A vehicle turning into another street to the left shall turn beyond the center of the intersection of the two streets."

It is settled law in this state that "a thing done in violation of positive law is in itself negligence." *Engelker v. Seattle Elec. Co.,* 50 Wash. 196, 96 Pac. 1039; *Wilson v. Puget Sound Elec. R.,* 52 Wash. 522, 101 Pac. 50, 132 Am. St. 1044; *Hillebrant v. Manz,* 71 Wash. 250, 128 Pac. 892; *Anderson v. Kinnear,* 80 Wash. 638, 141 Pac. 1151; *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331; *Sundstrom v. Puget Sound Tr., L. & P. Co.,* 90 Wash. 640, 156 Pac. 828.

It will thus be seen that there was evidence from which it could be found that the appellant was, and evidence from which it must be found that the respondents were, at the very time the collision occurred, engaged in an act in direct violation of positive law. This alone, however, will not preclude a recovery. If the fact be that the negligent act of the appellant was the direct and proximate cause of the injury, and the negligent act of the respondent did not contribute thereto in any material degree, the responsibility lies with the appellant, and the respondents may recover for the injuries suffered by them. *Hullin v. Seattle Taxicab Co.,* 119 Wash. 311, 205 Pac. 403, and cases there cited.

It was on this latter principle that the court submitted the case to the jury. But in so doing we think the court erred. It seems to us that it could be only

from the wildest speculation that the jury could find that the respondents' negligent acts did not contribute to the collision. Not only was there no evidence to that effect, but the evidence, both direct and circumstantial, was to the contrary. In the first place, it must be remembered that the laws enacted for the government of traffic on the highways are enacted for a purpose. These purposes are doubtless many, but one of the principal purposes is to require uniformity of course and action on the part of the users of the highway, and thus prevent that confusion and danger which would ensue if each individual user were permitted to choose his own course when traveling thereon.

In the second place, both observation and experience have shown that it is conducive to safety to require all users of a highway going in the same direction to keep to the same side of the way, and on entering into the intersection of highways to keep to a certain side of the center of the intersection. Indeed, so positive have the lawmakers been in their belief in the necessity of this latter requirement that they have not only enacted it into positive law, but have made it a misdemeanor to disobey the requirement. It is the rule, also, that, when one acts in direct disobedience of positive law and meets with an accident while in the very act of disobedience, he cannot charge the fault to another without a very clear showing to the effect that his fault did not contribute to the accident.

In this instance, had the respondents obeyed the mandate of the statute, their automobile, at the time the collision occurred, would have been on the far side of the intersection of the streets instead of being upon the near side; their course would have been directly across the street instead of diagonally across it, and they would have been a number of feet farther away

from the taxicab when they first came into the view of the taxicab driver than they actually were. Moreover, there was nothing to prevent them from taking the course the statutes prescribed. There was no permanent or even temporary obstruction in their way, and their disobedience of the statute was intentional and wilful. Nor are there any presumptions in their favor. Where two or more persons are equally guilty of a violation of law, and an accident ensues because thereof, the presumption is, if any presumption at all obtains, that the accident was the result of the combined fault. It is clear, therefore, that no one can with certainty say that the act of the respondents did not contribute to the injury. On the contrary, to our minds it very clearly appears that it did so contribute. Had the respondents been where the law required them to be, and where the taxicab driver had the right to expect them to be, the driver of the taxicab could have avoided the accident by either stopping the taxicab or by turning one way or the other into the intersecting street. He almost cleared them as it was and but a few more feet of space would have enabled him to have done so entirely.

The conclusion we reach, however, can rest on another consideration. Since the respondents were themselves guilty of negligence, the burden was on them to show that their negligence did not contribute to the injury, and this burden they did not meet.

The trial judge should have sustained some one of the various challenges the appellant interposed to the sufficiency of the evidence. The judgment is, therefore, reversed with instructions to dismiss the action.

PARKER, C. J., MACKINTOSH, TOLMAN, and MITCHELL, JJ., concur.