VanVleet v. Public Service Co.

BEULAH VAN VLEET, ADMINISTRATRIX, APPELLEE, V. PUBLIC SERVICE COMPANY OF YORK, APPELLANT.

FILED OCTOBER 20, 1923.   No. 23458.

1. Master and Servant: WORKMEN'S COMPENSATION ACT: COMPENSABLE ACCIDENT. Where an employee of a gas company engaged in making service connection with a gas main is suddenly overcome by gas, becomes unconscious, weak and sick, *held*, an accident producing objective symptoms of injury within the meaning of the employers' liability law.

2. ———: ———: ———. Death or injury arising solely as the result of an occupational disease is not compensable under the workmen's compensation act; but, where the result is attributable in whole or in part to an accident, the fact that, but for the accident, the disease of which claimant died would be classed as occupational, will not prevent compensation, which in such case is awarded for the accident, not the disease.

3. **Evidence** examined, and *held* to establish that death was the result of accident.

APPEAL from the district court for York county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*John G. Kuhn,* for appellant.

*C. E. Sandall, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, DAY and GOOD, JJ., REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

Action under the workmen's compensation act. The defendant and appellant is engaged in the manufacturing and distributing of illuminating gas in the city of York. The deceased, Frank M. Van Vleet, was in the employ of defendant as a gas-man, his duties consisting in a general way in looking after the gas distribution, capping mains, and installing the gas service in residences and places of business, and in making repairs. On November 1, 1921, while making a connection with one of the gas mains of the defendant, and down in a hole in the ground about two and one-half or three feet deep, he was overcome by escaping gas to such an extent that he could not walk without assistance, was hauled out of the hole and dragged back and forth in the open air for some time, and a physician called who conveyed him to his home, assisting him from the car to the house; he was put to bed and remained at home for four or five days, and went back to work. About the 1st of February thereafter he was gassed again while changing a booster at the gas plant, and came home complaining that he was sick, went to bed and stayed home three or four days. He went back to work, continuing until the 1st of March, when he came home sick, and after a few days, on the 5th of March, went to bed, where he remained until his death on March 18, 1922. There is some suggestion that he was gassed again on February 29 or March 1, but the inference arises only from the fact that he exhibited symptoms similar to those when he had been gassed. The de-

ceased had been gassed seven or eight times during his employment with defendant, extending over a period of about four years.

The administratrix was awarded compensation by the commissioner, and upon appeal by defendant to the district court the award was confirmed and judgment rendered awarding compensation, from which judgment defendant appealed.

The position of the claimant is that the death of the employee was the result of accident arising out of and in the course of the employment, while the defendant claims that there was no accident, and that the death was the result of an occupational disease which would not be compensable under the statute. The case is thus stated and presents two questions for determination: First, was there an accident? And, if so, second, was death the result thereof?

The Nebraska statute defines an accident as "An unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing objective symptoms of an injury." This definition was under consideration in the case of *Manning v. Pomerene*, 101 Neb. 127, in which it was held that, where the plaintiff attempted to move some iron beams by pushing with his body, when he felt pain in his stomach, became faint and weak, was compelled to cease work and be assisted home, and on the third day vomited blood and afterward had a slight paralytic stroke, his condition was the result of an accident, the court saying: "The unforseen event was the straining, weakening or lesion of the blood vessels of the brain or stomach, and this was an unforeseen event happening suddenly." It was also contended in that case that there were no objective symptoms of an injury; this was disposed of by the court in the following words: "Defendant's idea is that by objective symptoms are meant symptoms of an injury which can be seen or ascertained by touch. We are of the opinion that the expression has a wider meaning, and that symptoms of pain, and anguish,

such as weakness, pallor, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute." We approve this exposition of the meaning of the terms "accident" and "objective symptoms" as contained in the statute quoted, and the facts of this case bring it clearly within the terms as so defined. The testimony is undisputed that while tapping a gas main he was suddenly overcome by the gas and went clear down so that he had to be dragged out, was unconscious, could not move and could not talk. Surely this was an unexpected and unforeseen event happening suddenly and producing at the time objective symptoms of an injury. No details are given of the gassing about February 1, but there is evidence that he came home complaining that he had been gassed, went to bed, and was home three or four days, and from that on "he had a kind of deathly look, pale all the time, from that on until his death, and he complained of that heavy feeling in his stomach again, and it seemed as though he couldn't move the gas at that time." It is a fair inference from the evidence that this second event was of a character similar to the one of November 1, and was an accident producing objective symptoms of injury. As was said in *Matthiessen & Hegiler Zinc Co. v. Industrial Board,* 284 Ill. 378: "An injury is accidental, within the meaning of the act, which occurs in the course of the employment unexpectedly and without the affirmative act or design of the employee."

Suppose that in this case the employee had been overcome by gas in the manner shown, and suffered disability for a period of ten days, would the employer be heard to deny compensation on the ground that the disability was caused by an occupational disease? We think clearly not. While the evidence shows that gassing in a mild form is not uncommon among gas-workers, it is equally proved that for workmen to be overcome to such an extent as to produce unconsciousness is very uncommon.

The fact that the accident occurred while the employee

was in the performance of duties which subjected him to
the danger of being the victim of an occupational disease
does not convert the accident into an ordinary occurrence
incident to the employment, nor the deleterious effects
thereof upon the body of the employee into an occupational
disease, even though the symptoms are identical, for the
very obvious reason that the law awards compensation for
*accidental injuries,* regardless of their character; and dis-
ease which is fairly attributable to an accident, and death
resulting therefrom, is compensable, even though without
the occurrence of the accident such disease would fall with-
in the class occupational; otherwise, effect could not be
given to the statute; it is the accident, not the disease,
which is compensated. See *Industrial Commission v. Roth,*
98 Ohio St. 34, in which it was held: "The term 'occupa-
tional disease' must be restricted to a disease that is not
only incident to an occupation, but the natural, usual and
ordinary result thereof; and held not to include one oc-
casioned by accident or misadventure." See, also, *Tintic
Milling Co. v. Industrial Commission,* 60 Utah, 14. We are
of the opinion that the proof of accident is ample, and that
the question of the occupational character of the disease is
therefore immaterial.

The second question presents greater difficulties: Did
the death of the employee result from, or was it contributed
to by, the accident? If the employee had died immediately
or within a few hours or days after the happening of the
accident, we think all must agree that the accident was the
cause of his death. But it appears that he worked rather
steadily during the following three months and did not
take to his bed until about the 5th of March, and died, on
the 18th, of a disease termed by the doctors encephalitis,
which, in ordinary language, means inflammation of the
brain. The dispute is whether or not that disease may be
caused by carbon-monoxide poisoning, which was the active
agent by which the deceased was overcome on November
1 and February 1, and the determination of this question
rests very largely upon the testimony of expert physicians.

The evidence establishes that up to the attack of November 1 deceased was in a normal state of health, was ambitious, anxious to work, and worked overtime. After that date his health began to fail; later on, especially after the gassing of February 1, his appetite failed, he belched gas, had the odor of gas about him, was weak and irritable, staggered when he walked, had a deathly pallor, would sit on the floor and stare, had double vision for a short time, became very inattentive when spoken to, would have to be spoken to three or four times, and would have to be roused and wakened up for the purpose of taking nourishment. These symptoms, physicians who testified all agree, indicated degenerative processes in the body. The attending physician, who testified for the plaintiff, gave it as his opinion that these symptoms were indicative of encephalitis or inflammation of the brain, and also that degenerative processes in the brain might be set up by carbon-monoxide poisoning, and that the deceased died of encephalitis induced by gas poisoning. Dr. Updegraff, called by defendant, had not seen the patient, but, answering hypothetical questions, gave it as his opinion that encephalitis was the cause of death, but stated that in his opinion that disease was due to infection and could not be caused by gas poisoning. He admitted, however, that he did not know the cause of encephalitis, and said it might be a question of whether the number of times deceased had been gassed would be a contributing factor. He further testified that many people die from gas poisoning, but in 15 years' experience as physician for the Omaha Gas Company he had known of no case of death from that cause among the employees, and that the ordinary cases of gas poisoning among persons engaged in that occupation did not result in death. Dr. Delaney, called by defendant, testified that, except for the supposed gassing on the last day of February, the previous gassings were too remote to cause death; he distinguishes between chronic and acute gas poisoning, and says that the former is of slow and insidious onset, while in the latter the effects are more immediate, the eyes may

VanVleet v. Public Service Co.

be affected, and lack of coordination for a short period, and that coma is present in the acute and not in the chronic. He further testified that he could not say that the deceased did not die of carbon-monoxide poisoning. Dr. Shidler, called for the defendant, testified that the gassing would have a tendency to lower resistance and might cause fatty degeneration of the nervous system, and you may have mimic brain tumor or mimic encephalitis lethargic.

There was considerable discussion between counsel and the physicians about chronic and acute gas poisoning. Dr. Updegraff said there was no such thing as chronic gas poisoning, that all such cases were acute. The occasion of the dispute on this point, in the opinion of the writer, arises from the failure to distinguish repeated gassing from the pathological conditions resulting therefrom, counsel emphasizing the numerous occurrences, and the physicians the results thereof to the patient; but we think this discussion does not aid us.

From a painstaking study and consideration of the evidence of the expert physicians, we think the fair inference is in accordance with the finding of the labor commissioner and of the district court, that the death of the employee was caused, at least in part, by the gassings of November 1 and February 1, that the immediate cause of death was encephalitis due to gas poisoning. While the case is close to the line, we are unable to say that the finding of the lower court is manifestly wrong. The case is clearly distinguishable from *Blair v. Omaha Ice & Cold Storage Co.*, 102 Neb. 16, as in that case there was no accident. The case presents a reasonable controversy upon the question of liability, and does not call for the imposition of the penalties provided by the statute. We think, however, that the plaintiff should recover interest on the unpaid instalments provided for in the decree, and that he should be allowed attorney's fees in this court.

AFFIRMED.