[Nos. 21233, 21232.  Department Two.  August 21, 1928.]

RICHARDSON & HOLLAND, INCORPORATED, *Respondent,* v.
F. E. OWEN *et al., Appellants.*

VICTOR R. RICHARDSON, *Respondent,* v. F. E. OWEN
*et al., Appellants.*[1]

[1] NEGLIGENCE (16-1, 21)—CONTRIBUTORY NEGLIGENCE—PROXIMATE
CAUSE—EFFECT—EVIDENCE.  Recovery for damages through the
bursting of a steam boiler or fruit dryer, manufactured by de-
fendant for plaintiff, is not defeated by the contributory neg-
ligence of the plaintiff in that its use of the apparatus was in
violation of a city ordinance, where it appears that such neg-
ligence on the part of the plaintiff did not contribute to or con-
stitute a proximate cause of the injury, which was due solely to
the negligence of the defendant.

[2] DAMAGES (50, 114)—EXPENSE INCURRED—AMOUNT PAID OUT.  In
an action for personal injuries, expense incurred for doctors,
nursing and hospital service can not be shown by evidence of
the amount paid, or by the bills rendered.

Appeals from judgments of the superior court for
King county, Leavy, J., entered December 14, 1927,
upon findings in favor of the plaintiffs, in consolidated
actions in tort, tried to the court.  Affirmed in one case,
and modified in the other.

*Ryan & Desmond* and *Thomas M. Green, Jr.,* for ap-
pellants.

*Herr, Bayley, Croson & Innis,* for respondent.

HOLCOMB, J.—In these cases, the respondent cor-
poration sought to recover damages resulting to its
property; and the individual respondent sought dam-
ages for personal injury, medical and hospital ex-
penses sustained by him, by reason of a steam vessel,
tank or boiler manufactured for the corporation by ap-
pellants, bursting.

[1]Reported in 269 Pac. 838.

Both cases involve substantially the same questions of law and fact and were tried together. Separate findings of fact, conclusions and judgment were entered in each case; the cases were consolidated by stipulation and argued together on appeal. After trial to the court without a jury, findings, conclusions and a judgment in favor of the corporation were entered in the sum of $525. Findings, conclusions and a judgment in favor of the individual respondent were entered in the sum of $1,316, for personal injuries, medical, hospital and nurses expenses.

The trial judge having heard and considered all the evidence, oral, documentary and real, and having inspected the plant and machinery involved in the cases, omitting formal and unassailed ones, entered the following findings of fact:

"VI. That prior to November 14, 1924, plaintiff as president and general manager of Richardson & Holland, Inc., entered into negotiations with defendants which culminated in Richardson & Holland, Inc., ordering from defendants, and in defendants designing, manufacturing, and constructing, and on or about November 14, 1924, installing, on the third floor of the place of business of Richardson & Holland, Inc., at 518 First Avenue South, a glace fruit drier or dehydrator to be used by Richardson & Holland, Inc., for the purpose of drying fruits. That said glace fruit drier or dehydrator as designed, manufactured, and installed by defendants consisted of a sheet metal enclosed room approximately 9 feet long 4 feet wide and 6 feet high; inside of said room and on the south side thereof was erected a heating apparatus to be heated by steam conducted therein from the steam heating equipment in use in said building, the entrance of the steam into said heating apparatus being controlled by a valve thereon; said heating apparatus consisted of a tightly sealed hollow metal base, chamber or foundation approximately 42 inches long, 18 inches wide and 6 inches deep; from the top of said hollow chamber

there extended upward in an inverted 'U' shape, metal pipes each about 2 inches in diameter, the open ends of each pipe being securely fastened into the top of said hollow chamber; upon steam being conducted into said hollow chamber it would circulate through said pipes and thus create a high degree of heat, which by means of an electric fan placed on south side of said heating apparatus was caused to circulate throughout said metal enclosed room and upon, through and about fruits placed in wire baskets in said room for drying or dehydrating.

"VII. That the said heating apparatus designed, manufactured, and installed by defendants for use in said dehydrator was operated by steam from the boilers of the securities building, the owners of the building occupied by Richardson & Holland, Inc.

"VIII. That a short time prior to September 2, 1925, the said heating apparatus in said dehydrator became out of order in that water and steam leaked from around the sides, ends and bottom thereof and that defendants were notified by plaintiff of said facts and were requested to repair said apparatus and for that purpose said heating apparatus was removed to defendants' shops and repairs were made thereto by defendants, and that said apparatus was returned by defendants to the premises of Richardson & Holland, Inc., and was installed and connected with the steam line from the boilers of Securities Building Company, as it had been installed and connected originally.

"IX. That on September 2, 1925, for the first time after said repairs were made, said heating apparatus and said dehydrator were used for the purposes of drying fruits, and that while said heating apparatus and said dehydrator were being so used and were being used in the manner intended that they should be used, said heating apparatus exploded and burst and wrecked and damaged said heating apparatus and said dehydrator, and caused glass windows and other parts of said building to be damaged, and caused plaintiff to be severely burned and injured. That the pressure of the steam used in said heating apparatus at the time of, and immediately prior to, said explosion was not to exceed fifty (50) pounds.

"X. That at the time defendants undertook to design and manufacture said dehydrator and said heating apparatus, defendants represented to the plaintiff that they made a specialty of the manufacture of such apparatus; that defendants knew then and ever since have known that plaintiff and Richardson & Holland, Inc., had no knowledge pertaining to the construction of such apparatus, or what would be required to make such apparatus safe, or as to the manner or details of its design, manufacture, or construction, and that plaintiff and Richardson & Holland, Inc., were relying upon the superior knowledge, skill and advice of defendants with respect thereto.

"XI. That at all times herein mentioned, defendants knew that the heating apparatus in said dehydrator would be operated by steam at a pressure of from forty (40) to fifty (50) pounds as an average, but that at times the pressure might be as high as seventy-five (75) pounds; that said heating apparatus would explode and burst if it were not so designed, manufactured and repaired that it would withstand the pressure of the steam used therein and that if said heating apparatus were not designed, manufactured and repaired in such a manner as to withstand the pressure of the steam used therein, it would become imminently dangerous and would burst and explode and would endanger the lives and safety of persons and property in the vicinity thereof.

"XII. That the explosion or bursting of said heating apparatus on September 2, 1925, was caused by, and the proximate cause thereof, was, the carelessness and negligence of the defendants in improperly and defectively designing said heating apparatus for the purposes intended, in improperly and defectively manufacturing same, in improperly and defectively, welding same together, in improperly and defectively repairing same, in undertaking to fabricate together the flat sides, flat top, the ends and bottom plates of said apparatus by means of fusion welding instead of by the use of stays and stay bolts, and in doing and performing the welding that was done in the manufacturing and repairing of said heating ap-

paratus in a defective manner and in such a manner as to make said apparatus dangerous and unsafe and liable to explode if used at all for the purposes intended.

"XIII. That said heating apparatus as designed, manufactured and repaired by defendants, if used at all for the purposes for which it was manufactured and for which it was intended by plaintiff and defendants that it should be used, was inherently and imminently dangerous and was unsafe and was liable to burst and explode and to injure persons in the vicinity thereof and damage said apparatus and other property about said apparatus."

Finding XIV in the action of the corporation respondent is as follows:

"That as a direct result of said explosion, said heating apparatus and said dehydrating room were completely wrecked and destroyed so as to be of no value whatsoever and that the value of said property immediately preceding said explosion was the sum of Five Hundred Twenty Five Dollars ($525.00); that plaintiff failed to prove the amount of any other damage that may have been done to the building occupied by it."

Finding XIV in the action of the individual respondent is as follows:

"That as a direct result of said explosion, plaintiff was caused to sustain injuries which consisted of severe burns which necessitated his confinement in a hospital for about twenty-eight (28) days, and to suffer intense pain; that there are some scars on his body of a permanent nature. That because of said injuries, plaintiff was caused to incur expenses for hospital services and supplies in the amount of $248.00, which amount represents the reasonable value of said services, for service of doctors and medical attention, plaintiff was caused to incur expenses in the amount of $116.50, which amount represents the reasonable value of such services, and plaintiff was caused to incur expenses for nurses and nursing service in the amount

of $202.00, which is the reasonable value of said services.''

Findings XV and XVI in both cases are substantially the same, and are to the effect that plaintiff in neither case was guilty of any negligence which caused or contributed to the damages sustained, and that plaintiff in neither case was guilty of any negligence which contributed to the injuries sustained with respect to violation of ordinances of Seattle or otherwise.

The foregoing findings disclose the nature of the actions and the issues involved and are well sustained by the evidence in the case in favor of respondent in each case, with the exception of the evidence as to the hospital and nurses expenses incurred by the individual respondent, which will be referred to later.

An affirmative defense in each case alleges two certain ordinances of Seattle: No. 16,675, §§ 1, 2 and 16, and No. 34,204; section 15, amending §§ 2, 5 and 4 of No. 16,675.

Section 1 of Ordinance No. 16,675 defined boiler and steam apparatus subject to inspection under the ordinance, which was one relating and regulating the use of steam boilers and providing for inspection thereof, defining them as follows:

''The words 'boiler subject to inspection' hereinafter used in this ordinance shall be held and construed to mean and include any boiler or other apparatus used for generating steam under pressure, including all steam pipes, reservoirs, feed pipes and blow off pipes used under steam pressure in connection therewith, except locomotive boilers, boilers for heating or lighting private dwellings and boilers subject to inspection by United States inspectors. . . . ''

Section 2 of that ordinance makes it unlawful for any person owning such boilers subject to inspection to use, maintain or operate the same under steam pressure without complying with all the provisions of

the ordinance and obtaining and keeping posted under glass in a conspicuous place on the premises where such boiler is being used, a permit from the Inspector of Steam Boilers.

Section 16 of the ordinance provides the penalty for its violation.

The other ordinance relied upon by appellants is as follows:

"Certain boilers prohibited after July, 1908. From and after July 31, 1908, boilers subject to inspection having lap joints or single butt strap joints in the longitudinal seams of plates subject to tension shall not be permitted to be installed and placed under a greater pressure than fifteen (15) pounds per square inch; providing this shall not apply to boilers of the 'water' tube type manufactured within the limits of the City of Seattle prior to the 31st day of December, 1912."

[1] Appellants contend in both cases that, even conceding they were negligent in the construction or repair of heating apparatus described in the findings, nevertheless, respondents were guilty of contributory negligence in installing, maintaining and operating the boiler in question in violation of the ordinances proven and that such negligence bars a recovery in each case.

It is asserted that a violation of the positive law is negligence *per se,* and that a thing done in violation of positive law is a bar to recovery. *Twedt v. Seattle Taxicab Co.,* 121 Wash. 562, 210 Pac. 20. It is then stated that the sole remaining question is whether such negligence directly and proximately contributed to the injury.

Appellants then argue that this case is ruled by our decision in *Woolworth Co. v. Seattle,* 104 Wash. 629, 177 Pac. 664. See, also, *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 Pac. 9; *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac. 582; *Twedt v. Seattle Taxicab*

*Co.,* 121 Wash. 562, 210 Pac. 20; *Raymond v. Neurn-berg,* 124 Wash. 297, 214 Pac. 9; *Dodge v. Salinger,* 126 Wash. 237, 217 Pac. 1014; *Etheridge v. Norfolk South. R. Co.,* 143 Va. 789, 129 S. E. 680.

Appellants declare that the *Woolworth Co.* case, *supra,* is the case most applicable here because in that case the ordinance involved was for the benefit of the occupiers and users of the property and not for the benefit of the city and that these cases cannot be distinguished from it.

We agree with appellants that the *Woolworth Co.* case, *supra,* is most like this case, the other cases generally being cases involving traffic ordinances or laws regulating the rights and duties of parties with reference to each other. But we think the *Woolworth Co.* case is clearly distinguishable from this. In this case, without referring to the findings in detail, it will be recalled that such facts were found by the trial court as establish that if there were any negligence by reason of non-compliance with the ordinances in question on the part of respondents, it could only be a remote cause or condition. In the *Woolworth Co.* case *supra,* there were two corresponding duties under the ordinance on the part of both parties. It was said in the opinion that the finding of negligence against the city was unchallenged; that the evidence preponderated in support of the finding of contributory negligence on the part of appellant; that the two acts of negligence concurring and co-operating constituted the proximate cause or the occasion of the damage, therefore precluding recovery. In that case, the city was under the legal duty of providing and maintaining the sewer; the occupant of the property was under the legal duty of keeping the drains into the sewer clean, which the court found it failed to do. This court held that the flooding of the basement backward from the sewer

could be explained on no reasonable theory other than that the door into the valve of the drain had been rendered useless by reason of carelessness in permitting waste matter to get into it and clog it. That certainly constituted negligence on the part of the plaintiff in that case in a matter in which it was its legal duty to act and it did not act. That was therefore one of the proximate and efficient causes of the damage of which it complained.

The general rule of law is that, to defeat a recovery, plaintiff's contributory negligence must be the proximate cause of injury. Where plaintiff's negligence was in whole or in part the proximate cause, or as otherwise expressed, if the injury be the product of mutual or concurring negligence, no recovery can be had. 29 Cyc. 526-7.

Where the negligence of defendant is the proximate cause and that of the person injured is the remote cause, an action may be maintained, although plaintiff was not entirely free from fault. Where the act or omission of the person injured amounts merely to an antecedent occasion or condition of the injury remote in the sense of causation, it is not contributory negligence. Id. p. 529.

This court has approved such principles as the law. *Short v. Spokane,* 41 Wash. 257, 83 Pac. 182.

Referring again to the facts in these cases, it may well be doubted whether respondents' machine constructed by appellants was subject to the ordinances. Respondents procured their steam from the heating plant of the Securities Building Company, but it was in no wise operated or controlled by respondents. The apparatus obtained by respondents from appellants was not an apparatus for generating steam under pressure. The boilers which were subject to inspection were the boilers of the Securities Building Company,

which had been inspected, which had permits for use and all the requirements of the ordinances respecting them had apparently been met.

We think the evidence amply sufficient to sustain the findings of the trial court which, in effect, found that the negligent acts of appellants were the direct and proximate cause of the injuries, and no negligent acts of respondents contributed thereto so as to constitute proximate causes of the injury. *Rampon v. Washington Water Power Co.*, 94 Wash. 438, 162 Pac. 514, L. R. A. 1917C, 998; *Hadley v. Arms & Scott*, 136 Wash. 632, 241 Pac. 26.

We are in accord with the findings and conclusions of the trial court upon that phase of the cases.

[2] Appellants contend that there is no evidence to justify the award to the individual respondent for hospital expense in the sum of $248 and nurses' fees in the sum of $202.

Respondents contend that no proper objection was made to the evidence upon these matters and that the findings of the trial court must be sustained. It is clear from the record that sufficient objection was made by counsel for appellants, that evidence as to what was paid to doctors, the hospital and the nurses, or what their bills were, was immaterial and incompetent and no proper proof of such damage. It is also clear that counsel for respondents fully intended to cover the matter by further evidence, but, probably, in the heat and pressure of trial work, inadvertently overlooked it and failed to follow it up. After the objection made by appellants was sustained, respondents then caused the physician who attended the private respondent to qualify and testify as to the reasonable value of his services in the sum of $116. The physician disclaimed any qualification to testify as to the value of the nurses' services and they were not called. The

physician did testify, however, that he knew the room occupied by the individual respondent in the hospital and the reasonable value of that room was thirty-five dollars per week.

The individual respondent then testified that he was confined in that hospital twenty-seven days, which would approximate four weeks. There was no evidence as to the reasonable value of the nurses' services or of the hospital expenses, other than as above. To that extent the reasonable value of the hospital expenses was shown, but the reasonable value of the other services was not proven and cannot be allowed. See *Torgeson v. Hanford,* 79 Wash. 56, 139 Pac. 648; *Fairbanks Steam Shovel Co. v. Holt & Jeffery,* 79 Wash. 361, 140 Pac. 394, L. R. A. 1915B, 477.

Under these facts and the law above cited, the sum of $140 is all that can be allowed respondent for hospital and nursing expenses, a reduction of $310 from the judgment awarded to the individual respondent.

In all respects, except as above stated, the judgments are affirmed. In the case of the individual respondent, No. 21232 in this court, the judgment is reduced $310 by reason of which appellants also will recover their costs in that case in this court.

FULLERTON, C. J., ASKREN, and BEALS, JJ., concur.

MAIN, J., concurs in the result.