[No. 31142.   Department One.   February 25, 1950.]

MICHAEL A. CARR, *Respondent,* v. JACK E. MARTIN *et al.,*
*Appellants.*[1]

[1]Reported in 215 P. (2d) 411.

*Horrigan & Leavy,* for appellants.

*Stephen E. Chaffee* and *Ralph A. Rodgers,* for respondent.

GRADY, J.—This action was instituted by Michael A. Carr against the appellants to recover damages for personal injuries arising out of a rear-end collision between their truck and the automobile in which respondent was riding. A jury rendered a verdict in favor of respondent. An appeal has been taken from the judgment entered. The main questions raised by appellants are whether competent evidence was submitted by respondent that his injuries were caused by the impact of the vehicles, and whether there was sufficient proof of special damages.

The record shows that at some time during his boyhood, respondent was thrown from a horse and sustained an injury to his back. In 1943, while he was engaged in changing a truck tire, his back was again injured, and in 1946 he fell down a flight of stairs and sustained an injury in the region of the lower part of his back. In January, 1947, an operation was performed upon his lower back for the removal of a herniated disc. About a year subsequent to the automobile accident of September 22, 1947, another operation was performed for the purpose of fusing the vertebrae between which the herniated disc had been previously removed. After the injury in 1946, respondent received industrial insurance awards. His claim was finally closed in December, 1947, when the department of labor and industries made a final award for permanent partial disability, being thirty per cent of unspecified injury.

The fusion operation was of substantial benefit. Respondent had become able to do various odd jobs. Early in September, he sought a release from the department in order that he might seek regular employment. He was on such a mission September 22, 1947, when the accident occurred.

Respondent was riding in an automobile driven by a companion. The driver of an automobile ahead gave a stop signal, to which his companion responded by stopping his car. The appellants' truck, carrying a load of concrete mix, collided with the rear of the automobile, causing it to move forward and strike the rear of the automobile ahead. The respondent testified that his shoulders reached the top of the seat; that the impact of the truck forced the back of the seat backwards four to five inches; that the force of his impact with the back of the seat was on his neck and the middle of the upper part of his back, and that he was forced upwards so that the middle of his back was over the top of the seat; that the force of the impact with the automobile ahead caused a very hard contact by his feet with the floor of the car and his knees with the dash; that his arm contacted and bent the rubber-covered metal projection from the door lock; that his shins were skinned, his arm bruised, and a knuckle on his right hand injured.

In his description of the effect of the impact upon him, he stated he saw a million stars, that everything was green, red, black, and yellow for a few seconds, and then his vision returned. At first, he did not feel able to get out of the automobile, but later did so and made observations as to the condition of the vehicles involved. His next sensation was a hurt feeling in his lower back and in his neck. He stated the "leader" on the right side of his neck was paralyzed, and he was unable to turn his head in that direction. He felt pain in his neck, back, legs, and feet. He testified in detail as to physical conditions not existing before the accident, but which had become manifest since its occurrence, and as to his pain, suffering, and inability to sleep or rest. He stated he had a brain concussion.

He was corroborated in many particulars by lay witnesses, and if he and they were competent to testify as to what was felt and observed, there was sufficient evidence upon which to base a verdict by the jury.

The appellants called two physicians as witnesses. One of them had examined respondent for about one hour on October 23, 1947, made various tests, and took X-ray pictures. His testimony and opinion excluded the idea of there having been a resultant brain concussion as asserted by respondent, or that there was any causal connection between the accident and the ailments of which respondent complained. He attributed any ailment which might in fact exist to his previous condition. The other physician testified hypothetically and, with reference to the subjects about which inquiry was made, connected them with causes other than the accident. A lay witness testified as to some physical work he had observed respondent performing some months after the happening of the accident.

The assignments of error are directed to instructions given to the jury upon which it might base a verdict if it found from the evidence that the injuries of which respondent complained resulted from the impact of the vehicles, including the reasonable value of services of physicians and hospital services which had been reasonably required and actually rendered, and any that might be reasonably certain to be required and to be rendered in future treatment; also the reasonable value of the time lost, if any, by reason of inability to pursue his occupation as a result of such injuries, as well as future time to be lost, if any, by reason of diminished earning capacity. Other assignments of error relate to the absence of competent evidence as to the reasonableness of the charges made and paid for the services of physicians and hospitalization. Error is claimed because the court allowed the jury to consider the claim of an injury consisting of a concussion of the brain and for injuries caused by numbness of the hands, pains in the right hip, and pain generally throughout the body. One assignment of error is that the court allowed respondent to amend his

complaint to add an allegation of damages to his eyes. Claim is also made that the court, over objection, allowed respondent to testify after reading a medical report made by a doctor who was not a witness, in order to refresh his recollection.

The appellants argue that all of the testimony submitted by respondent and his lay witnesses related to subjective symptoms and conditions, and, there having been no expert medical testimony submitted by him showing that the injuries of which he complained were caused by the impact of the vehicles, the jury necessarily had to speculate and guess as to the cause of his physical disability. They state it may be that his present condition is solely referable to the accident which he had in 1946; that it may be due to the fact that he apparently has had an unstable back for many years before the accident; that it may be partially referable to the automobile accident; that only an expert in such matters could determine to what extent, if any, his present disability was the result of the accident; that, there being no objective symptoms or conditions, there was a complete failure of proof of any facts upon which a verdict might be based; that all of this applies with much greater force to the claims made for future medical and hospital services and loss of time because of inability to follow a gainful occupation.

■ If we could accept appellants' theory that respondent and the witnesses called by him testified with reference to injuries and symptoms wholly subjective, we might be able also to accept their conclusion, but we are of the opinion that the external shock to the body of respondent by the impact of the vehicles followed by pain in his head, back, and eyes, limping, difficulty in getting around and out of an automobile, groaning while so doing, and the appearance of swelling under the eyes and in his neck constitute an injury and symptoms objective in character. *Bekelski v. O. F. Neal Co.*, 141 Neb. 657, 4 N. W. (2d) 741; *Schroeder v. Western Union Telegraph Co.* (Mo. App.), 129 S. W. (2d) 917; *Albert v. Krey Packing Co.* (Mo. App.), 195 S. W. (2d)

890; *Plano Foundry Co. v. Industrial Comm.,* 356 Ill. 186, 190 N. E. 255; *Van Vleet v. Public Service Co. of York,* 111 Neb. 51, 195 N. W. 467; *Frantz v. Schroeder,* 184 La. 945, 168 So. 110.

These cases arose in states having workmen's compensation acts which cover accidents producing at the time objective symptoms of an injury. The courts were called upon to define "objective symptoms" in response to contentions made that they were limited to symptoms of an injury which can be seen or ascertained by touch. In the *Bekelski* case, *supra,* plaintiff sustained a shock by witnessing a person meeting an accidental death. She suffered no physical injury to her person, but commenced to have pains in her head and back. She was irrational and hysterical, her blood pressure became higher, and her pulse more rapid. The pupils of her eyes became dilated, her posture abnormal, and she had tremors and an inability to walk in her usual manner. The court said:

"These are objective symptoms within the definition of that term as laid down by this court in *Manning v. Pomerene,* 101 Neb. 127, 162 N. W. 492, wherein we said: 'Defendant's idea is that by objective symptoms are meant symptoms of an injury which can be seen, or ascertained by touch. We are of opinion that the expression has a wider meaning, and that symptoms of pain, and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute.' "

Our attention has not been called to, nor have we been able to find, any case in which we have attempted to define the terms "objective injuries" or "objective symptoms," but we have made reference to them, particularly in industrial insurance cases in which workmen who had suffered injuries were making claims for additional compensation because of an alleged aggravation thereof, or were claiming that their allowance for permanent partial disability was insufficient. A study of those cases indicates that if, in order to determine whether the claimed disability or

aggravation thereof flowed from the injury, scientific knowledge possessed only by medical experts was necessary in a particular case, such a conclusion could not be drawn from the testimony of the claimant or lay witnesses, nor even by a medical witness who had not treated him, but had examined him for the purpose of testifying, and gave an opinion based upon subjective symptoms. We gave expression to this subject in *Tonkovich v. Department of Labor & Industries,* 31 Wn. (2d) 220, 195 P. (2d) 638, as follows:

"We cannot agree with the witness Levinson [a medical witness] that the cancer was probably caused by the injuries resulting from the claimant's fall. It is quite true that courts must necessarily depend upon the evidence of experts in cases of this nature, because of the fact that the courts are not experts in medicine, lumbering, agriculture, mining, electricity, or any of the numerous activities of life, to the study of which, men and women devote their entire time. It is also true that questions of whether a given physical defect is attributable to, or caused by an impaired physical condition, must be determined from medical experts."

In *Graham v. Police & Firemen's Ins. Ass'n,* 10 Wn. (2d) 288, 116 P. (2d) 352, we had before us a dispute as to whether an accidental fall sustained by an insured caused his death or whether he died as the result of a coronary obstruction, and we said:

"In determining questions such as presented in this case, court and juries must accord great weight to the evidence given by physicians. They may, however, consider the testimony of nonexperts when it is based upon observation and the opportunity to draw a conclusion. In cases where the information is the result of familiar association, a layman may testify to disposition, appearance, and physical condition of an individual."

A reading of our cases considering questions of the competency of lay and expert witnesses, the weight to be given their testimony, whether certain facts may be established by nonexpert witnesses, such as the injured persons themselves and those who have contacted and observed them prior and subsequent to their injuries, can easily lead to some confusion and a feeling that some of them are not

wholly consistent with others. We find statements to the effect that each case to a large extent must depend upon its own facts and circumstances, and that what has been said in a particular opinion must be considered in the light of the situation before the court and cannot be given literal application to the facts of some other case.

We shall not attempt to reconcile our cases on the subject of objective and subjective symptoms, or attempt here to determine the circumstances in which the testimony of nonexpert witnesses may be sufficient to take a case to the jury, or the circumstances in which medical testimony only will suffice. In *Spalding v. Dept. of Labor & Industries,* 29 Wn. (2d) 115, 186 P. (2d) 76, we made an extended review of such questions, and we think the opinion fully supports our conclusion that the testimony of the respondent and his lay witnesses was sufficient to make a case for the jury, even though he submitted no expert testimony and even though some of the injuries claimed and their symptoms may be said to be subjective. The following quotation taken from Medical Trial Technique, by Goldstein and Shabat, is very persuasive:

"Injuries and diseases of the back, particularly of the lower back, present disturbing problems to both doctors and lawyers because (a) it is often difficult to distinguish legitimate claims from fraudulent, (b) some x-rays give little aid in diagnosing certain types of back injuries, (c) in making a diagnosis it is often necessary to rely almost wholly upon the history and the sometimes unreliable recital by the patient of his subjective symptoms."

We find no error in submitting the case to the jury and in denying the motion of appellants for a judgment notwithstanding the verdict.

One of the assignments of error relates to testimony that respondent suffered a brain concussion. When respondent was testifying on direct examination, he made a statement, unresponsive to the question asked, that an X-ray picture he saw showed he had received a brain concussion. No motion was made to strike that part of the answer to the question. No further reference was made to that subject by

counsel for respondent. On cross-examination, it was developed that the doctor examining respondent for possible sinus trouble told him he had suffered a brain concussion as a result of the accident. The respondent was then cross-examined at length on the subject, from which it was made to appear that he had a very good understanding of what a brain concussion was, how it could occur, and what its effect might be, all consistent with such being one of the results of the accident. The question became one for the jury to determine.

■ An assignment of error is directed to the special damages awarded consisting of services of physicians and hospitals, it being urged that no evidence was submitted as to their reasonable value. The respondent testified that the services were rendered and were necessary. He introduced in evidence statements of account for those which he had become obligated to pay, receipts for those for which he had made payment, and testified as to one item with reference to which he produced no statement or receipt. No affirmative testimony was adduced that the indebtedness incurred or amounts paid were the reasonable value of the services rendered.

The court was of the opinion that the evidence of the indebtedness incurred and the amounts paid by respondent for the services of physicians and the hospital raised a presumption that the charges made were reasonable and the burden was on appellants to prove otherwise. This rule finds support in *Brown v. City of Blaine*, 41 Wash. 287, 83 Pac. 310, and *Webster v. Seattle, Renton & Southern R. Co.*, 42 Wash. 364, 85 Pac. 2, in which we said that amounts paid for the services of a physician constituted some evidence of the reasonable value of the services rendered, and when physicians were employed the presumption followed that there was some expense attached to such employment.

However, in *Torgeson v. Hanford*, 79 Wash. 56, 139 Pac. 648; *Richardson & Holland v. Owen*, 148 Wash. 583, 269 Pac. 838; *Cole v. Schaub*, 164 Wash. 162, 2 P. (2d) 669, 7 P. (2d) 1119; *Hutteball v. Montgomery*, 187 Wash. 516, 60 P. (2d)

679, we definitely decided that proof of amounts of indebtedness incurred or paid for such services as are rendered by physicians, nurses, and hospitals is not sufficient upon which to base a verdict or a judgment, but there must be evidence of their reasonable value. The court should not have submitted the claims for special damages to the jury.

The remaining assignments of error relate to matters discretionary with the court. We find no abuse of such discretion.

■ The judgment entered on the verdict was for the sum of $8,596.05, of which $7,500 was for general damages and $1,096.05 special damages. The cause is remanded with directions to grant a new trial unless within thirty days from the going down of the remittitur the respondent files a written consent to a reduction of the judgment to the extent of $1,096.05. Upon such written consent being filed, the judgment as reduced shall stand affirmed. Neither party will recover costs and disbursements in this court.

BEALS, SCHWELLENBACH, and DONWORTH, JJ., concur.

SIMPSON, C. J. (dissenting in part)—I concur except as to that portion of the opinion which refuses to allow appellants' costs in this court. Appellants were compelled to appeal in order to protect their rights and were successful in reducing the judgment in a very substantial amount. They should recover their costs, which are much greater than respondent's.